JOSEPH BOOTHBY, Administrator,

*vs.*

BOSTON AND MAINE RAILROAD.

York. Opinion May 29, 1897.

</div>

*Railroad. Negligence. Issues of Fact. Noise of Locomotive. Crossing.*

The plaintiff recovered a verdict upon the following undisputed facts: At the time of the accident the defendant railroad company had a train consisting of a locomotive and several flat cars standing on its track near a crossing. The locomotive was headed toward the crossing and was distant therefrom about forty feet. The train was stationed there to load the flat cars with logs. The locomotive had steam up as was necessary in order to quickly move the train from time to time, but no steam was escaping. Neither the engineer nor the fireman was on the locomotive, but both were seated on the bank some thirty feet distant. The plaintiff's intestate, riding with her husband in a wagon behind a horse along a traveled road, came to this crossing and stopped before passing over. At this moment steam suddenly escaped from some part of the locomotive, making a noise that frightened the horse which ran away, throwing out the plaintiff and inflicting injuries upon her from which she afterwards died.

*Held*; that whether the steam escaped from through the safety valve on top of the locomotive, with a sudden, sharp and loud noise that would frighten an ordinarily well-broken horse; or it escaped through the cylinder cocks, making only a slight hissing noise, insufficient to frighten an ordinary horse, were questions of fact for the jury, who have found for the plaintiff under instructions not complained of. The court considers that the evidence is not untrue.

Under the instructions of the court, the jury rendered a special finding that the defendant was in fault in not sufficiently guarding against such an escape of steam at that time.

Upon this issue, the jury found that the defendant's servants, the engineer and fireman, by the exercise of reasonable care, could have kept the steam up to the necessary working point while the locomotive was stationary, and yet prevented its sudden escape. The court considers that there is practically no evidence that this was impossible or improbable. It seems probable and the engineer practically admits it.

*Held;* that the defendant was bound to anticipate that travelers with teams might, at any time, approach this crossing; and was bound to be mindful of the danger to them of steam suddenly escaping at high pressure,—although the fee in the crossing was in the defendant who had been unable to prevent or limit travel over it, but finally gave it up, removed all bars and other obstructions, put up the usual sign of a railroad crossing, and suffered people to pass freely across the track without objection.

ON MOTION BY DEFENDANT.

This was an action on the case in which the jury returned a verdict of $3000 in favor of the plaintiff, as administrator of his wife's estate, for causing the death of his wife at a railroad crossing of the defendant corporation at a place called Warren's crossing in the town of Wells, York County. The defendant filed a general motion for a new trial.

The case is stated in the opinion.

*H. Fairfield* and *L. R. Moore*; and *J. M. Stone*, for plaintiff.

*G. C. Yeaton*, for defendant.

Way not public: Counsel cited: *Mayberry* v. *Standish*, 56 Maine, 342, 355; *Cyr* v. *Madore*, 73 Maine, 53; *Harriman* v. *Howe*, 28 N. Y. S. 855 (78 Hun, 250); *Spear* v. *Utrecht*, 121 N. Y. 420; *Sprow* v. *B. & A. R. R. Co.*, 163 Mass. 330.

Defendant not negligent: If the noise did come from the safety valve, then the safety valve was in good condition, and fulfilled the function which alone it is adapted to and placed upon a locomotive for. In *Scaggs* v. *Prest. Man. & Co. Del. & Hud. Canal Co.*, 145 N. Y. 201, 209, it is said that, "of course," the use of a mechanical device "to prevent dangerous accumulations of steam" is not negligence. To like effect, among the late cases may be cited *Omaha & Rep. Val. Ry. Co.* v. *Brady*, 39 Neb. 27, 39–42; *Omaha & Rep. Val. Ry. Co.* v. *Clark*, 39 Neb. 65; *Abbot et al.* v.

*Kalbus*, 74 Wis. 504; *Cahor* v. *Chic. & N. W. R. R. Co.*, 85 Wis. 570; *Bittle* v. *Camden & Amboy Railway Co.* (Court of Err. 4 App. N. J. Jan. 1894) 9 Am. R. R. & Corp. Reps. 472, and citations in note.

There can be no higher standard of duty toward a mere licensee (if not a trespasser) on a private way than on a public way. *Louisville & N. R. Co.* v. *Survant*, 27 S. W. Rep. 999, and *Burk* v. *Del. & Hud. Canal Co.*, 33 N. Y. S. 986 (89 Hun, 519) support our contention here. In the case last cited it was said, page 989, to be "settled law in this state [New York] that a railroad company at a private crossing is not required to give any warning of the approach of its train, and that the only duty it owes the licensee at that crossing is to do him no intentional wrong or injury."

SITTING: EMERY, FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

EMERY, J. The undisputed facts are these:—At the time of the accident the defendant railroad company had a train, consisting of a locomotive and several flat cars, standing on its track near a crossing. The locomotive was headed toward the crossing and was distant therefrom about forty feet. The train was stationed there to load the flat cars with logs. The locomotive had steam up·as was necessary in order to quickly move the train from time to time, but no steam was escaping. Neither the engineer nor the fireman was on the locomotive, but both were seated on the bank some thirty feet distant.

The plaintiff's intestate, riding with her husband in a wagon behind a horse along a traveled road, came to this crossing, and stopped before passing over. At this moment steam suddenly escaped from some part of the locomotive, making a noise that frightened the horse which ran away throwing out the plaintiff, and inflicting injuries upon her from which she afterwards died.

The plaintiff contended, and there was evidence tending to show, that the steam escaped through the safety valve on the top of the

locomotive, and that the noise was sudden, sharp and loud, and calculated to frighten ordinarily well-broken horses. The defendant stoutly contended that the steam escaped through the cylinder cocks and made only a slight, hissing noise, insufficient to frighten an ordinary horse. These are pure questions of fact. As the jury found for the plaintiff under instructions not complained of, we may assume the facts to be as contended by him in this respect. The evidence for the plaintiff, if true, furnishes a sufficient basis for the verdict on these issues, and we do not feel clear that the evidence is untrue.

The jury further found (the plaintiff's intestate being in the exercise of due care) that the defendant was in fault in not sufficiently guarding against such an escape of steam at that time.

This finding is specially assailed and is to be reviewed.

The defendant's locomotive, with all its machinery and appliances, was rightfully there. The steam necessary for its quick working under its load was rightfully kept up to an efficient working point. All noises occasioned by the necessary and efficient management of the locomotive and the train at that time and place, such as pumping water, emptying cylinders, maintaining pressure, etc., were rightfully made. People driving horses in that vicinity were obliged to take the risk of all such noises. *Whitney* v. *Port. & Rochester R. R. Co.*, 69 Maine, 208.

On the other hand, in the care of its locomotive, whether stationary with steam up, or running, the railroad company must bear in mind the danger to others from the noises caused by escaping steam, and must exercise reasonable care to prevent the steam escaping with such suddenness and force as to injure others. While it may for various purposes rightfully sound the steam whistle, no matter who is frightened, it should not do so unnecessarily in the vicinity of travelers with horses. *Hill* v. *Maine Central R. R. Co.*, 55 Maine, 438.

Could the defendant's servants, the engineer and fireman of this locomotive, by the exercise of reasonable care, have kept the steam up to the necessary working point with the locomotive stationary, and yet have prevented its sudden escape through the safety valve at

the time the plaintiff's horse was at the crossing, some forty feet distant? The jury have found that they could, but did not. Is there any good reason for such a finding which could properly influence reasoning men, or is the finding without reason?

It appears that the safety valve was set at one hundred and fifty pounds pressure, while one hundred pounds pressure was sufficient working pressure. It is urged by the plaintiff that, had the engineer or fireman been watchful of the steam gauge, he could have seen the rising pressure and easily lowered it before the extreme limit was reached, there being at the time no immediate need of more than the ordinary pressure. This seems to us very probable. The engineer practically admits it. There is practically no evidence of its impossibility or improbability.

The defendant earnestly contends, however, that it had no reason to expect the plaintiff's intestate to be in that vicinity with a horse,—that she had no right to be there,—and hence it was not bound, as to her, to guard against the sudden and noisy escape of steam through the safety valve. The defendant owned the fee of its location, including the crossing and the spot where the horse took fright. There was no regularly located road over the crossing. But there has been a path or road, more or less traveled with teams, before the location of the railroad across it many years ago. After locating its railroad and purchasing the fee of the land, the defendant tried for a while to prevent or limit the travel over the crossing, but finally gave it up, removed all the bars and other obstructions, put up the usual sign of a railroad crossing, and suffered people to use the crossing for passing the track without objection. The road was freely, if not frequently, used by all having occasion.

The plaintiff's intestate, in undertaking to pass over the track at this place under these circumstances, was not such an offender against the law, or the defendant, as to relieve the defendant from the duty of due care. The defendant was bound to anticipate that travelers with teams might at any time be approaching that crossing, and was bound to be mindful of the danger to them of steam suddenly escaping at high pressure.

We must defer to the judgment of the jury on all the various issues of fact.

<div align="right">*Motion overruled.*</div>