C. B. BROOKS, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 2, 1903.

1. **Railroads:** FIRES: EVIDENCE: INFERENCE. The evidence showed that the engine hauling a train labored in its movements, and the conclusion that it threw sparks is legitimate.

2. ———: ———: ———: ———: DEMURRER. Whenever from all the facts and circumstances in evidence a jury may, without doing violence to the dictates of reason and common sense, infer a given fact on account of its known relation to the fact proven, the court should not interpose its own different conclusion.

3. ———: ———: ———: TRAIN RECORD. Defendant's train records showed that no train passed over its track on the night that plaintiff's barn burned; while it is not probable that such records were erroneous, yet it does not necessarily follow that courts can say that such evidence completely overthrows other evidence, which in the court's opinion is of a less convincing character.

4. ——: ——: ——: ——: OWNER OF ENGINE. While the train records showed that no train passed over the road, yet as there was conflicting evidence in respect to that fact it will be presumed that the engine drawing the train, if any, was the property of the defendant and under its control.

5. ——: ——: ——: INSTRUCTION: POSSESSION. Where a railroad is in exclusive possession of its track, it is presumed that an engine and cars passing over such tracks are under its operation, and an instruction failing to state that the engine alleged to have set out a fire was operated by the defendant, is not fatally defective.

Appeal from Vernon Circuit Court.—*Hon. H. C. Timmonds,* Judge.

AFFIRMED.

R. T. Railey for appellant.

(1) There was no substantial evidence that a freight train passed along defendant's track by plaintiff's barn. (2) There was no evidence either proving or tending to prove, that the freight train which it is claimed passed, was operated by defendant. There is an entire failure of proof upon this subject. If one was run upon defendant's track, it was contrary to orders, without the knowledge or consent of the train dispatcher, and hence the presumption obtains, that no such train of defendant passed over the road. The presumption is that every one performed his duty. State ex rel. v. Bank, 120 Mo. 169; Yarnell v. Railroad, 113 Mo. 579; Hammond v. Gordon, 93 Mo. 226; Lenox v. Harrison, 88 Mo. 491; State ex rel. v. Williams, 99 Mo. 302; Mathias v. O'Neill, 94 Mo. 528; Bush v. White, 85 Mo. 356; Henry v. Dulle, 74 Mo. 451; Long v. J. M. & S. Co., 68 Mo. 431. (3) Defendant having shown that it had no trains passing over its road, under its control and operated by it, at the time complained of; and plaintiff having introduced no evidence that the train complained of was operated by defendant; and the presumption of law being that defendant's servants would

not thus operate a train, it devolved upon plaintiff to show by competent evidence, and not by mere conjecture, that the train complained of was actually operated by defendant. Having signally failed to do so, the court had no right to turn the jury loose, and allow them to convict defendant of a violation of duty, under the facts in this case. Peck v. Railroad, 31 Mo. App. 125; Perkins v. Railroad, 103 Mo. 57; M. S. & D. Co. v. Railroad, 86 N. W. 452; Finkelston v. Railroad, 86 N. W. 1007; Orth v. Railroad, 50 N. W. 365; Flanaghan v. Railroad, 67 N. W. 794; Stratton v. Railroad, 42 Pac. 602; Railroad v. DeGraff, 29 Pac. 664; Railroad v. Morton, 32 Pac. 345; Sheldon v. Railroad, 29 Barb. 226; Railroad v. Edmondson, 29 S. E. 213; Frier v. Pres. etc., 33 N. Y. S. 886. (4) The wind was blowing from the barn towards the track, and there was no evidence tending to show that sparks of fire did escape or could have escaped and burned the barn. (5) Plaintiff's instruction No. 1 is clearly erroneous, in that it authorized the jury to find a verdict against the defendant, if the locomotive complained of belonged to defendant, instead of requiring the jury to find that it was operated by defendant. Cousins v. Railroad, 66 Mo. 578.

Scott & Bowker for respondent.

(1)  A demurrer to the evidence admits not only the truth of the facts therein disclosed, but also every reasonable inference favorable to the plaintiff. Creighton v. Modern Woodmen, 90 Mo. App. 378; Torpey v. Railway, 64 Mo. App. 382. (2) To entitle a plaintiff to recover damages for fire escaping from a locomotive engine under the statutes of 1899, it is sufficient to prove that the railroad company owned and operated the railroad, and that fire escaped from a locomotive engine in use upon the road. It is not incumbent upon the plaintiff to prove that defendant owned and operated the locomotive engine. R. S. 1899, sec. 1111. (3)

The fact that the instructions required the jury to find unnecessarily that the locomotive engine complained of belonged to defendant, instead of being used upon a road belonging to, or being controlled by, defendant, is not such an error as will warrant the appellate court in reversing the trial court. Campbell v. Railway, 121 Mo. 340. (4) The appellate court will not review the weight of the evidence in an action of law, when there is substantial evidence in support of the verdict. Polharrs v. Railway, 45 Mo. App. 153. (5) Evidence that just before defendant's train passed plaintiff's barn there was no fire, and that within fifteen minutes after defendant's train passes plaintiff's barn was on fire, and the evidence showing that the fire went from defendant's track to the barn, was sufficient to warrant the court in submitting the question to the jury as to the origin of the fire. Torpey v. Railway, 64 Mo. App. 382; Kenney v. Railway, 70 Mo. 243; Redmond v. Railway, 76 Mo. 550.

BROADDUS, J.—This is a suit to recover the value of certain personal property which was destroyed by fire alleged to have been communicated to a barn by an engine operated by defendant on its railroad, said personal property being in the barn at the time of said fire. The plaintiff was a tenant and did not own the fee to the premises on which said barn was situated. A part of the property belonged to another and the plaintiff sues not only for the loss of his own property but also as the assignee of said other person.

The fire occurred on the 24th day of June, 1901, at about 11:30 o'clock p. m. A diagram showing the location of the barn and railroad track in question and surroundings was in evidence and as it will be useful to a proper understanding of the case it is inserted here:

It will be seen by said diagram·that the barn in question was situated near the northwest corner of section 22 and that the plaintiff's house was in the northeast corner of section 21, and that a public road was located between the two sections, running north and south; that the west end of the barn came up to the public road, and that defendant's track passed over said public road in a northeasterly and southwesterly direction.

The plaintiff recovered judgment from which defendant appealed. At the close of plaintiff's case the defendant offered a demurrer to the evidence which the court overruled. The chief contention of the defendant is that the plaintiff did not make a case for the jury.

The evidence disclosed that the northwest corner of the barn was fifty-four feet south of the center of defendant's track where it crosses the public road, at which point defendant had a cattle guard; that at the time of the fire there was some loose hay and trash in said cattle guard, that hay was scattered along the public road from defendant's track at said cattle guard to the barn, and that the weather was very dry.

In brief, the testimony tending to show that the fire was communicated to the barn by fire from defendant's engine was as follows: John McBride, who lived south and west of the barn, testified that on the night of the fire he heard a heavily-loaded freight train going east over defendant's road towards plaintiff's place; that defendant's track is located south of his house, where he was at the time he heard the train pass, about eight rods; and that it passed after defendant's passenger train went east at 8:45 o'clock p. m. Charles McBride, the son of said John McBride, testified that he had been on a visit to a neighbor and that after coming home to his father's house he heard a heavy freight train going west over defendant's track. He thought at the time that it was about 10:30 o'clock p. m., but he had no timepiece to go by. S. W. Hackney testified that he heard a freight train pass over defendant's road on the night in question, but could not say which way it was going. He said that there was a long trestle east of his house which caused a great rumbling noise when trains passed over it. He was not certain as to the time when the train passed but thought it was between eleven and twelve o'clock at night. He lived about a quarter of a mile west from the railroad. Alexander Monroe, a farmer living one and a half miles west of plaintiff's house,

testified that the defendant's track passes through his farm within a quarter of a mile of his residence; that he was seated on his west porch on the night in question and that between ten and eleven o'clock, not far from eleven, he saw a heavy freight train coming from the west over defendant's track; that he saw the headlight and the lights on the caboose, and that the train consisted of from twenty-five to thirty cars. He also stated that he heard the whistle of the engine for the crossing east of his house and that it was an up-grade from his house all the way to the plaintiff's barn. He was impressed by the fact that it was unusual for trains to go by at that time of night. Walter Jones, who resided in the neighborhood, testified that he had been at Nevada on the day in question and was returning home at night in company with his brother, O. H. Jones, and Clark Duzon; that near eleven o'clock they passed in a wagon over defendant's track at what was known as the Diehr crossing, one mile and a quarter west of the barn; that as they approached the crossing they heard a heavy freight train coming east over defendant's railroad; that it sounded the whistle for said crossing; and one of the three persons named suggested that they had better hurry and get over the track, as the train was coming. He further stated that after they had got across the track, and had got near Mr. Diehr's house, one of the party remarked "there goes the train." O. H. Jones, one of said party, testified similar to that of his brother, Walter. He stated that it was about eleven o'clock, according to his judgment, when he heard the train; that it was a heavy one and it appeared that it could hardly get up the grade. He stated that the Diehr crossing was about a mile from the plaintiff's crossing. Joe Wade testified that he was at Nevada on the day named and returned at night; that on his way home he traveled south on the public road that passed by plaintiff's barn; that he thought when he passed the latter it was a little after eleven o'clock; that he saw no fire at

that time; that he lived one mile due south of the barn; that he was driving a single horse to a road wagon, going in a trot; that when he got home he heard what he thought was the whistle of a train at the Brook's crossing; that he put his horse in his barn, went to the house, got a lunch, and started to undress when he discovered the fire; and that it had not been more than twenty-five or thirty minutes from the time he passed the barn until he saw the fire. George Woods, who was sleeping at plaintiff's house, testified that he was aroused by the fire; that he went out to the barn at about 11:30 o'clock, at which time the northwestern corner of the barn was burning; that the grass and hay that had accumulated in the cattle guards, and the grass on the east side of the public road running to the northwest corner of the barn had been burned; that the ties at the cattle guards in the public road were on fire; that it was plain to be seen where the fire had gone from the cattle guard on the east side of the public road to the northwest corner of the barn; and that the doors of the barn were then closed as they were the evening before. The plaintiff testified similarly.

It seems from the evidence of the persons who were first at the fire that it had made considerable progress at 11:30 o'clock, and at that time the grass and hay in the public road leading to the barn from the cattle guard had been burned. It is therefore reasonable to infer that it must have started not far from eleven o'clock, but a little after that time, according to the evidence of the witness Wade. Whereas the witnesses differ as to the time they heard or saw a train passing over defendant's road a mile or more west of the barn, yet some of them fix the time so near to eleven o'clock that the conclusion (if they tell the truth), taken in connection with the trail of the fire from the cattle guards to the northwest corner of the barn, the nearest point to the railroad track, the heavily loaded train laboring up the grade, most reasonable is, that the defendant's engine

emitted sparks that started the fire. And in coming to this conclusion we are not unmindful of the defendant's contention that as the wind was blowing in an opposite direction that would carry sparks from the engine in an opposite course from that of the barn, which would necessarily cause the fire to travel from the barn to the railroad track and not from the track to the barn. It is true that there was evidence that there was some wind at the time, but the testimony was generally to the effect that it was rather a quiet night with but little wind. If it had been shown that a steady wind of moderate force even, had been prevailing at the time it would have been a strong circumstance and entitled to much weight in repelling the inference that the fire was communicated from defendant's engine.

But it is a rule of physics that sparks, emitted from the smokestack of an engine while in motion at ordinary speed during a slight wind, are not entirely controlled in the direction which they take, after being thrown out, by the wind, but by friction with the atmosphere caused by the forward movement of the engine, and the heavier sparks descend on a line corresponding with that pursued by the engine. By this means we may account for the starting of the fire in or near said cattle guards. It was a question of the preponderance of one of the two forces—the momentum of the engine or the speed of the wind. It is true that no one saw sparks thrown out from the smokestack of the engine, yet if the description of the laborious movement of the train be true it would be a legitimate conclusion that it did throw out sparks, which engines invariably do under such circumstances. Torpey v. Railway, 64 Mo. App. 382.

Without countervailing testimony, no court nor jury would be authorized to say that no freight train passed over the defendant's road at the point in question about the hour of eleven o'clock; that no fire occurred soon thereafter which destroyed plaintiff's property; and that the surrounding circumstances do not naturally

lead to the conclusion that the fire was communicated by sparks from defendant's engine. And we think the case comes within the rule announced in Peck v. Railway, 31 Mo. App. 123: "Whenever, from all the facts and circumstances in evidence a jury may, without doing violence to the dictates of reason and common sense, infer a given fact on account of its known relation to the fact proved, the court should not interpose its own different conclusion."

The defense was that no such train as the one described by plaintiff's witnesses, nor in fact any train whatever, passed over defendant's road going either east or west on the night in question after that of its 8:30 o'clock p. m. passenger train. It was insisted that plaintiff's witnesses were misled by mistaking a train that passed over the tracks of the Missouri, Kansas & Texas railroad at about the same time, said road being located about two miles distant from that of defendant. The defendant introduced its train dispatchers and their record, as well as its books, in which conductors register their arrivals at the different stations on its railroad. These train dispatchers testified that no trains whatever went out upon the railroad without their orders; that there was no order for any train over said railroad on said night except the regular passenger train mentioned and that their records show no such other train; and the book kept for conductors shows none such was registered. The evidence thus introduced was sufficient to convince any reasonable mind, unaccompanied with suspicion as to the good faith with which it was offered, and without any contradictory testimony, that no freight train passed over defendant's road at the time in question after the passage of its regular passenger train. That was just its value, and no more. It is not in the nature of physical facts, which the courts and juries are bound to recognize and nothing can overturn as evidence. It is not probable, but it is possible, for a train dispatcher and his records to be in error, and for the

reason of their apparent trustworthiness they should have great weight; but it does not therefore necessarily follow that the courts' are authorized to say that such evidence completely overthrows other evidence which in the opinion of such courts is of less convincing character.

But defendant contends that the plaintiff did not show that the freight train alleged to have passed over its track on the night in question was controlled and operated by defendant, and cites us to certain authorities to sustain such contention. The foundation for this claim is that the law presumes every one does his duty and as the defendant's train dispatchers testified that no freight trains were dispatched over its road at the time alleged, the presumption is that none went over it. But it is sufficient to say, in answer to this, that the evidence was conflicting in that respect, for which reason the presumption did not unqualifiedly obtain. And we think it safe to say that the presumption would be, that an engine found being operated over defendant's road was the defendant's property and was under its control. We do not think the authorities cited have any application.

The defendant objects to plaintiff's instruction numbered one, which is as follows: "The court instructs the jury that if they find from the evidence, that on the 24th day of June, 1901, the plaintiff herein was the owner of and in possession of the personal property described in the first count of his petition, and that on said date the same was located in a barn used by plaintiff adjacent to the defendant's line of railway, and that on said date fire was communicated to said barn from a locomotive engine of defendant, in use upon its said line of railway; and that said fire communicated as aforesaid burned up and destroyed the said personal property of plaintiff contained in said barn, then your finding must be for the plaintiff on the first count of his petition, and you will assess his damages on said first

count at the reasonable value of said personal property at the time it was so destroyed, if you find that it was destroyed, not to exceed the sum of nine hundred and eighty dollars.''

The objection is that it fails to state that the engine in question was being operated by defendant. In Cousins v. Railway, 66 Mo. 572, it was held: ''A railroad company is not liable . . . for stock killed by one of its locomotives which was at the time being used by a servant of the company without authority, for his own purposes, and outside of the line of his employment.'' It was also there held that such defense need not be specially pleaded but may be given in evidence under the general issue. In that case the defense was interposed by the introduction of evidence on the part of defendant to show the servant was operating the engine without the authority of the railroad company, for his own purposes, and while not in the line of his duty.

It has never been held, to our knowledge, otherwise than that if an engine and cars are being used on the road of a company, the presumption is that they are being controlled by such company. We believe it universally understood that a railroad company that is in control and operating a particular railroad is controlling and operating it to the exclusion of all other railroads or persons. And this is true notwithstanding the engines and cars of other railroads are permitted to use such railroad. There was no pretense but what the defendant was in the exclusive possession of the railroad in question, and the presumption would necessarily follow that an engine and cars found passing over its tracks were under its operation and control. A similar objection is made to plaintiff's second instruction.

Finding no error in the trial, the cause is affirmed. All concur.