IRA SCRIPTURE *vs.* MAINE CENTRAL RAILROAD COMPANY.

Penobscot.    Opinion March 25, 1915.

*Collision.    Flagman.    Grade Crossing.    Injury.    Last Chance.    Negligence. Obscured Vision.    Proximate Cause.    Railroad Crossing.    Want of Due Care.    Warning.*

1.   It is negligence per se for the driver of a team to cross a railroad track without first looking and listening for a coming train.
2.   Where two main lines of track exist, and the crossing of the first line is covered by a standing train, it is contributory negligence for the traveler to attempt to cross the second line after the crossing has been cleared without making all reasonable effort to determine whether a locomotive is passing on the second line.
3.   That the plaintiff was clearly guilty of contributory negligence, especially in view of the fact that he was warned not to cross by various people in addition to the flagman.    The jury were not warranted in finding a verdict in his favor.

On motion for new trial by defendant.  Motion sustained.  Verdict set aside.

This is an action on the case to recover damages for personal injuries alleged to have been caused by the negligence of the defendant company, while attempting to cross the tracks of the defendant company, which extend across Railroad Street in the City of Bangor. Plea, general issue.  The jury returned a verdict for plaintiff for $300, and the defendant filed a motion for a new trial.

The case is stated in the opinion.

*George E. Thompson,* for plaintiff.

*Fellows & Fellows,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HANSON, JJ.

CORNISH, J.  While the plaintiff was attempting to drive his team over a grade crossing on Railroad Street in the City of Bangor he was struck by an engine of the defendant and somewhat injured.  The ground alleged in his writ for holding the defendant legally responsible for his injuries is that the flagman stationed at the crossing gave him the signal to go forward, and while obeying the invitation he was hit by an engine run in a negligent and reckless manner.  Had these allegations been proved the verdict rendered in the plaintiff's favor would have been justified; but the evidence falls far short of substantiating these claims or of proving any negligence on the part of the defendant, and on the contrary establishes the plaintiff's own want of due care, as the proximate cause of the injury.

The situation was as follows:  Front Street runs parallel with the tracks of the defendant company and is located between the tracks and the Penobscot River.  Railroad Street leads from Front Street across the tracks at grade to Pleasant Street, and is situated between the old and the new passenger stations.  At this crossing were two main lines of tracks, the east bound and the west bound with certain yard tracks branching off.  The plaintiff, the driver of a double team with a dump cart, was an employe of the city and had been collecting rubbish on Front Street.  His destination was the city dump, to reach which it was necessary for him to drive over Railroad Street crossing.  When he reached the crossing it was blocked by a shifting engine with four cars on the east bound track, next to Front Street. He stopped and waited, as he says, probably two minutes, until the

crossing was clear, and the train had moved a short distance toward the east, that is toward the new Union Station. He says that the flagman, who was standing between the west bound and the east bound tracks, and who came into view when the crossing was cleared, then signalled him to cross and he had gone about half-way across the second track when another engine backing down from the Union Station struck the off hind wheel of his cart and he was thrown off.. The point of controversy here is the act of the flagman, and on this the conclusion is irresistible that instead of inviting the plaintiff to cross he was using every endeavor to prevent him. Not only was he waving the flag, as the plaintiff himself admits, but he was also shouting to the plaintiff to stop; yet regardless of either visible or audible warning the plaintiff whipped his horses and kept on his course to the point of collision.

Under this state of facts, the truth of which is fully established by the evidence, no legal liability for this accident was imposed upon the defendant. It had performed its legal duty and was guilty of no breach, either in the way of omission or commission. It had provided a flagman at this crossing, who was at his post and performing his duty. The engine which struck the team had brought in the afternoon passenger train from the west and, detached, was on its way to the engine house situated west of the old passenger station. It was equipped with an automatic air bell which was constantly ringing. Its speed was eight or ten miles an hour, which could not be deemed excessive, when a flagman was at the crossing. As soon as the engineer discovered the signal to stop given by the flagman he put on the emergency brake but it was too late to avoid the collision. Clearly the defendant was not negligent and the last chance doctrine does not apply.

On the other hand the lack of due care on the part of the plaintiff is equally apparent. He had lived in Bangor twenty-five years and was thoroughly familiar with the crossing and its surroundings. He knew there were two main lines of track. When the first line was cleared by the moving of the shifting train he took no precaution to ascertain if any other engine or train was coming on the other track. This was inexcusable. If, as the counsel for the plaintiff contends, the shifting train in its new position prevented his seeing the engine approaching on the other line from the east, that fact did not excuse him for rushing into possible danger but on the contrary rendered

it necessary that he take other means of determining whether or not a train was approaching. Obscured vision does not remove the burden resting on the traveler. *Fletcher* v. *R. R. Co.*, 149 Mass., 127, *Lundergan* v. *R. R. Co.*, 203 Mass., 460. But it is clearly proved that had the plaintiff looked, after he had passed the end of the shifting train if not before, he could have seen the approaching engine and have stopped in ample season to avert danger. He did not look at any point. He himself admits it. He says, "I didn't look. I had no occasion to look."

In addition to this it is proved that the plaintiff was warned by others as well as by the flagman. The conductor of the shifting train, seeing the engine coming, dropped off the rear car, stepped close to the team, swung his arms and shouted to the plaintiff to stop; but the latter disregarded his warnings, whipped up his horses and started across. The brakeman on the same train, who was at a distance of eighty-six feet to the west, also shouted to the plaintiff to stop, but his cries also were unheeded. Evidently the plaintiff was either reckless or thoughtless, more likely the latter, but either is fatal to his recovery. He had perhaps become somewhat impatient at being obliged to wait the two or three minutes for the shifting train which was blocking the crossing on the first track and when he started he was oblivious to everything. The flagman testifies that the plaintiff paid no attention to his swinging of the flag nor to his shouting, "never looked at me at all, no more than I was not there." Such conduct on the part of the plaintiff bars his recovery under the fixed, familiar and wholesome rules of law in this State applicable to the duty of travelers at grade crossings of steam railroads. *Giberson* v. *B. & A. R. R. Co.*, 89 Maine, 337; *Blumenthal* v. *B. & M. R. R.*, 97 Maine, 255; *Lewis* v. *Washington Co. R. R. Co.*, 97 Maine, 340; *McCarthy* v. *B. & R. R. Co.*, 112 Maine, 1; *Goodwin* v. *Maine Central R. R. Co.*, 113 Maine. The verdict is so manifestly wrong that it cannot be allowed to stand.

*Motion sustained.*
*Verdict set aside.*