CHRISTINA M. COLLINS *vs*. MAINE CENTRAL RAILROAD COMPANY.

JAMES EDWARD COLLINS *vs*. MAINE CENTRAL RAILROAD COMPANY.

Penobscot.     Opinion, February 9, 1939.

*Stern, Stern & Stern,* for plaintiffs.
*Perkins & Weeks,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J.   These actions concern a railroad crossing accident at Bangor on February 11th, last, in which the defendant's freight train locomotive collided with a truck then being driven by James, but owned by his wife, Christina Collins. He sues for personal injury and she for property damage.

Verdicts in both cases were directed for the defendant, to which rulings exceptions were taken and perfected.

A basic position taken requires first consideration, and that pertains to the standard of care required of observance by the defendant.

It is urged that the evidence fails to establish "the legal character of the crossing where the accident occurred . . . whether it was a public way or a private way, or whether plaintiffs as against the defendant had any right whatever to be using the crossing." The defendant contends that the only duty it owed the plaintiffs was to refrain from wilful, wanton, or reckless acts of negligence. It is not claimed there was, and we do not find in the record any evidence that would establish, any such negligence.

It does not appear that this way was ever legally established as a street or a highway. But may not the facts herein, viewed most favorably for the plaintiffs, as they must be (*Gould* v. *Maine Central Transportation Company*, 136 Me., 83, 1 A., (2d), 908; *Bryne* v. *Bryne et al.*, 135 Me., 330, 333, 196 A., 402), preclude the defendant from denying that it owed them a duty of due care? Was the driver of the truck an invitee by implication? No express invitation is claimed.

In *Chenery* v. *Fitchburg Railroad*, 160 Mass., 211, 35 N. E., 554, the trial judge refused to instruct that "if people were in the habit of using the crossing and the defendant had made no objection, the plaintiff was not a trespasser, and the defendant was bound to use reasonable care to protect her," but charged "that if, taking the whole condition of things into account, the physical condition of the crossing, the width of it, the extent to which it was travelled, etc., a reasonably intelligent and prudent man would have understood that the defendant by implication declared that the crossing was public, and that he, as a member of the public, might pass over it, the defendant was bound to do what was reasonable and necessary to do in order to protect an ordinarily intelligent and prudent man who was rightfully there." In the opinion it is stated:

"As against a bare licensee, a railroad company has a right to run its trains in the usual way, without special precautions, if the circumstances do not of themselves give warning of his probable presence, and he is not seen until it is too late. . . . If the circumstances did give warning of the plaintiff's probable presence, it was because the mode in which the crossing was prepared, coupled with the other facts in evidence, showed an invitation, as that word commonly has been

used and understood. . . . Theoretically, at least, there must be a line at which the way in which the face of the earth is prepared will express the owner's assent to its being entered upon, and short of which it will not express such assent. . . . What, then, is it fair to require of an owner as against strangers? If they enter without his license, they are trespassers, however incompetent and wanting in judgment they may be. What must he do to diminish his rights? . . . It must be something which, by a general standard of understanding, gives leave to enter. That standard is the understanding of the ordinarily prudent and intelligent person, not man as against woman, but a person possessed of ordinary intelligence and prudence, as against one who has less than the ordinary."

In *Black* v. *Central R. Co.*, 85 N. J. L., 197, 89 A., 24, 51 L. R. A. (N. S.), 1215, it is said:

"Such liability is based not upon the landowner's dedication of the street and its acceptance by the public, but upon the appearances he has created, so that the question for the jury is not whether such acts of the owner were proof of an intention to dedicate a public street, but whether they had created an appearance calculated to induce the public to use the way in the belief that it was what it appeared to be.

"Although the fundamental principle that underlies this doctrine is that of estoppel, it is generally treated under the head of implied invitation, thereby distinguishing it from express or inferred invitation, which is limited to those having business with the owner of lands or upon his premises."

Also see *Texas & P. R. Co.* v. *McManus*, 38 S. W., 241, 242; *Markham* v. *Houston & T. C. R. R. Co.*, 1 Tex. App. Civ. Cas., 35; *Cowans* v. *Ft. Worth & D. C. R. Co.*, 89 S. W., 1116, 1117; *Taylor* v. *President, Etc., of Delaware & H. Canal Co.*, 8 A., 43 (Pa.); *Lodge et ux.* v. *Pittsburgh & L. E. R. Co.*, 89 A., 790 (Pa.); *Missouri P. R. Co.* v. *Bridges*, 12 S. W., 210; *Kelly* v. *Southern Minn. R. Co.*, 9 N. W., 588.

In the Kelly case, *supra*, is cited *Webb* v. *Portland & Kennebec R. Co.*, 57 Me., 117.

In the Webb case our Court stated "that it was not for the defendants to say in this action that there was no highway there, if there was a crossing which they and all others interested permitted the public to use as such, and which was, in fact, in great and constant use. Under such circumstances, the plaintiff would be there with the rights of a traveler on a highway, and as regarded him and all others traveling there, the defendants would be subject to the same duties and liabilities as if the street had been a highway *de jure* as well as *de facto*."

Also see *Moore* v. *Maine Central R. R. Co.*, 106 Me., 297, 301, 76 A., 871; *Boothby* v. *B. & M. R. R. Co.*, 90 Me., 313, 317, 38 A., 155.

To give one, using a railroad crossing, the rights of a traveller on a highway, under the doctrine of implied invitation, it is not essential that the use cover the period of years necessary for the acquirement of a prescriptive right. The invitation once extended, whether implied or express, gives right to an immediate use which continues until withdrawn or until the user, if he can prove the necessary elements of prescription, obtains such a right.

Our conclusion, then, is that, while an unobjected use by the public of a railroad crossing alone is not enough to establish an implied invitation, there may be facts as to its construction, maintenance, and use that will warrant a jury in finding such an invitation and such facts present, as said in *Black* v. *Central R. Co.*, supra, "a question for the jury under proper instructions. . . ."

Although in the instant cases there was not much evidence bearing upon the character of this crossing, there was some. It did appear that it was planked and graded and that without objection it had been used by the public for many years with full knowledge of the railroad company. In defendant's brief it is conceded that Mr. Collins "had been using this crossing frequently for five years peddling meat and fish to the Burke residence" and it is stated therein "It was not more frequently than once a week." Also from the defendant's testimony, the jury might have inferred from facts proven that the defendant was accustomed to whistle and ring the bell for this crossing until passed over. We are of the opinion there was sufficient evidence in the case to entitle the plaintiffs to have the question as to implied invitation submitted to the jury. If the

basis for the directed verdicts was that the duty owed was only that to a trespasser or a mere licensee, viz., to refrain simply from acts of wanton, wilful, and reckless conduct, and that there was no such evidence in the case, then, by refusal to submit the cases to the jury, the plaintiffs were denied the opportunity to have decided by it the factual questions of an implied invitation and, if found to have been given, performance of its consequent duty of due care.

## LAST CLEAR CHANCE

In the early case of *O'Brien* v. *McGlinchy*, 68 Me., 552, this doctrine was clearly stated:

"Generally, it is a defense to an action of tort that the plaintiff's negligence contributed to produce the injury. But in cases falling within the foregoing description, where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care at the time by the defendant. This rule applies usually in cases where the plaintiff or his property is in some position of danger from a threatened contact with some agency under the control of the defendant when the plaintiff cannot and the defendant can prevent an injury."

Recently this Court stated in *Kirouac* v. *Railroad Company*, 130 Me., 147, on page 149, 154 A., 81:

"The plaintiff may still recover in spite of his agent's negligence, if there came a time prior to the collision, when his driver could not, and the defendant's motorman could, by the exercise of due care, have prevented the accident. . . . If the negligent operation of the truck continued to the moment of the collision, or for such a period of time that the motorman could not thereafter by the exercise of due care have stopped his car before the crash, there can be no recovery."

Counsel for the defendant argue: "The doctrine of last clear chance does not apply when the defendant is free from negligence."

If by that is meant negligence only antecedent to the time when the defendant has an opportunity to avoid the accident, we can not agree. We conceive that a defendant may be liable on the doctrine of last clear chance when his only negligence consists of failure, as the ordinarily careful and prudent person would not fail under like circumstances, to exercise the "last clear chance" to avoid the accident. True it is that liability in last clear chance is based on negligence, but the negligence on which liability is thus founded is not prior thereto, but the then failure to avoid the accident by the exercise of due care. Cited in support of defendant's contention is *Scripture* v. *Railroad Company*, 113 Me., 218, 93 A., 362, wherein it is stated:

> "Under this state of facts, the truth of which is fully established by the evidence, no legal liability for this accident was imposed upon the defendant. It had performed its legal duty and was guilty of no breach, either in the way of omission or commission. . . . Clearly the defendant was not negligent and the last chance doctrine does not apply."

We construe the last sentence quoted as meaning simply this, that the Court were of the opinion that the evidence clearly showed lack of all negligence upon the part of the defendant, including that which would be necessary to apply the doctrine of last clear chance, — that is, failure to avoid the accident by employment of due care. In 11 C. J., page 282, it is stated:

> "The doctrine chiefly relates to proximate cause. What is understood by it is this, that where plaintiff, by his own negligence, has placed himself in a dangerous position where injury is likely to result, defendant, with knowledge or such notice as is equivalent thereto of plaintiff's danger, is bound to use reasonable care and diligence to avoid injuring plaintiff, and where by the exercise of such care he could do so but · fails to avoid the injury, this negligence introduces a new element into the case and renders defendant liable, because such negligence becomes the direct and proximate cause of the injury."

In Shearman & Redfield on Negligence, 5th Ed., Sec. 99, it is stated:

"It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. . . . the plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was more immediately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if, having sufficient notice to put a prudent man on the alert, he does not take such precautions as a prudent man would take under similar notice. This rule is almost universally accepted."

In *Gilbert* v. *Erie R. Co.*, 97 Fed., 747, the rule is stated in this language:

"That where the plaintiff, by his own negligence, has placed himself in a dangerous position, where injury is likely to result, the defendant, with knowedge, or such notice as is equivalent thereto, of the plaintiff's danger, is bound to use reasonable care and diligence to avoid injuring the plaintiff; and where, by the exercise of such care he could do so, fails to avoid the injury, this negligence introduces a new element into the case, and renders the defendant liable, because such negligence becomes the direct and proximate cause of the injury. We do not think the principle settled in these cases applies to a case where it clearly appears that the injury is the result of the concurrent negligence of the plaintiff and defendant."

We quite agree with defendant's contention that "The defendant is not rendered liable under the last clear chance rule if, in the exercise of due care, it could not prevent the accident after it acquired, or should have acquired, knowledge of the impending danger from which plaintiff could not extract himself."

It is also contended that "When the plaintiff's negligence continues *substantially* [italics ours] to the time of the accident he can not invoke the doctrine of last clear chance." It is not a matter of "substantial" continuance. The plaintiff's negligence either contributes as a proximate cause to the accident or does not. If it continues to the time of impact and is a contributing cause, he can not recover, and also, if it continues only to the time when the defendant "thereafter by the exercise of due care" (*Kirouac* v. *Railway Company*, supra, page 149) can not prevent the collision, the doctrine of last clear chance does not apply. It is only the act of negligence of the defendant that is performed by commission or omission following the complete cessation of prior negligence of the plaintiff that can be held to be the proximate cause of the accident.

While the opinion in *Butler* v. *Railway*, 99 Me., 149, 58 A., 775, cited by defendant, contains this statement on page 160, "The language of the doctrine of prior and subsequent negligence implies that the principle is not applicable when the negligence of the plaintiff and that of the defendant are practically simultaneous," the opinion read as a whole clearly shows that if the defendant's negligence takes place "independent of and distinct from any prior negligence" of the plaintiff, the plaintiff's negligence is not the proximate cause of the injury and will not bar recovery. In the Butler case, it was held that the plaintiff's negligence continued to the time of collision and the Court said:

"It is not like the case of one who by his own prior negligence has merely put himself in a position of danger. . . ."

Here we have two conflicting versions of fact, although as to some facts there is concurrence. This crossing is on a way that leads from State Street southerly over some trolley tracks and then over the crossing in question to property of the Bangor Water Works, and particularly for purposes of these cases, to a dwelling house, occupied by Mr. Burke, superintendent of the water works company.

Mr. Collins this day had occasion to make use of this way in delivering some fish at the Burke residence. He drove his truck southerly over the crossing to the Burke house, transacted his business, and came out. Then, he testified that, having left his truck about

twenty-five feet southerly of the crossing, before getting into it, he walked up toward the crossing and looked in both directions to see if a train were approaching, and saw none. On his left (westerly) as he walked up toward the crossing was a part of the Burke house which obstructed his vision in that direction, while on his right (easterly), the only obstruction to vision was the garage of the water works corporation.

The plan introduced as an exhibit shows that the view easterly from the crossing progressively increases from about four hundred feet when the truck driver is thirty feet southerly from the crossing to seven hundred twenty-five feet when at the crossing.

Mr Collins also says that, having taken this easterly view on foot, he got into the truck, immediately looked easterly, saw no train, proceeded to drive in low gear at six or seven miles per hour up toward the crossing, and that while so doing, until he got to within a foot or two of the planking, he was looking westerly (the train that hit him came from the east), because he knew that ordinarily at that time of the day a train did come from that direction. Although he had looked easterly when he first started, he did not again look in that direction until he was practically at the crossing. Then he looked to the east and saw the train approaching about three hundred paces from him. He decided he did not have time to cross the track, stopped the truck, and attempted to back out of danger, but his engine stalled when he had backed only about six inches. We quote from the direct examination of Mr. Collins:

"Q. As you looked to the right and saw this train coming around the bend as you testified, what did you do?

"A. Well, I stalled. I started my car and I put her in reverse gear, and she made a jump back, like that (indicating), and she stalled. It was kind of cold, and I kind of fumbled around with my foot for the starter, but I don't remember about that time. The train struck me. It seemed to be about three or four seconds."

So the plaintiffs contend that even if due to his own negligence Mr. Collins had gotten himself into a perilous situation, actually known to the defendant or which, in the exercise of due care, should have been discovered by it, his negligence ceased and thereafter the

defendant had an opportunity in the exercise of due care to avoid the collision, failed so to do, and is liable under the doctrine of last clear chance.

The defendant's version is quite different. It says that due to obstructions it was impossible for either the engineer or fireman to see the truck southerly of the railroad crossing until the engine was within one hundred eighty feet of the crossing. At that point, testified the fireman, he saw the truck some fifty feet southerly of the crossing, proceeding slowly toward it; expected the truck driver would stop and not go onto the crossing, but when the truck was some twenty-five feet southerly of it, saw there was every indication that the truck would not stop. He then hollered "Whoa," whereupon the engineer, not having seen the truck at all, put on the emergency brakes and sanded the rails. It appeared that the train could not be stopped in a less distance then three hundred feet. Thus the contention of the defense is that on the facts as they actually existed, it never had any "last clear chance" of avoiding the accident.

In support of its contention, the defendant takes certain figures as to time and distance and claims to be able to demonstrate mathematically that when this truck was seen or possible of being seen by the train operators, it was too late to avoid the accident by stopping the train. But these figures were not ascertained by time-piece and measure; they were only estimates. The jury might have found the train was proceeding less than twenty miles per hour and that the time was longer than Mr. Collins' estimate. Our Court said in *Ham* v. *Railroad Co.*, 121 Me., 171, on page 180, 116 A., 261, on page 265:

> "In fact mathematical calculations based upon mere estimates either of time or distance are apt to be misleading as a slight variation in the postulate creates a vast change in the mathematical result."

Also see *Bedell* v. *Railway Co.*, 133 Me., 268, 273, 117 A., 237.

It was for the jury to determine the speed of the train and how far from the crossing its locomotive was when its operators did see or, in the exercise of due care, should have seen Mr. Collins in a position of danger, although there due to his own act of negli-

gence; whether his negligence had then ceased; and whether thereafter the defendant could have avoided the collision by the exercise of due care.

Thus were raised typical jury questions which should have been submitted to that tribunal.

*Exceptions sustained.*