171 A.2d 433 (1961)
Carmelita M. FLOOD, Lester M. Flood, Neil N. Flood, pro aml, Rita M. Flood, pro aml,
v.
BELFAST AND MOOSEHEAD LAKE RAILROAD CO.
Supreme Judicial Court of Maine.
June 12, 1961.
Anthony J. Cirillo, Pittsfield, Abraham J. Stern, Bangor, for plaintiffs.
Hillard H. Buzzell, Clyde R. Chapman, Belfast, for defendant.
*434 Before WILLIAMSON, C. J., and WEBBER, TAPLEY, SULLIVAN, DUBORD, and SIDDALL, JJ.
WILLIAMSON, Chief Justice.
These four tort actions under the old rules arise from a grade crossing collision in which a freight train struck an automobile. The plaintiffs are Lester M. Flood, the driver of the car, his wife Carmelita, his daughter Rita, then about 9 years old, and his son Neil, then about 13 years old. The cases, tried together before a jury, reach us on exceptions to the direction of a verdict for the defendant in each case.
Under the familiar rule, the main issue is whether there was sufficient evidence which, if believed, would warrant a jury in finding in each case negligence on the part of the railroad and freedom from contributory negligence on the part of each plaintiff. Jordan v. Portland Coach Co., 150 Me. 149, 107 A.2d 416; Ward v. Merrill, 154 Me. 45, 141 A.2d 438.
There are two issues neither of which, in our view, controlled the decision of the presiding justice, which we shall dispose of for convenience at the outset.
First: The defendant seriously urges that the evidence would not warrant a finding that the Belfast and Moosehead Lake Railroad Co. operated the freight train. It does not deny that it operated the train, but argues that the plaintiffs did not prove the fact.
The time of twelve jurors and the Court was unnecessarily taken with listening to testimony with objections by the defendant designed to prove this simple fact. The record sufficiently shows that the accident took place on the defendant's track. It does not demand, nor could it well demand, more proof that it was a railroad company operating a railroad.
Under these circumstances there plainly arises a presumption that the defendant was operating the train. Common sense requires such a presumption. Surely it would have been strange had the plaintiffs called, let us say, the president of the railroad, or its chief engineer, or other officials with records, to prove what was so likely to be the fact and so easily disproved by the railroad if it were not.
If more evidence were needed to bring a reasoning mind to this conclusion, it may be found in the record. The plan admitted by agreement showed the track of the "Belfast Moosehead Lake Railroad." The defendant itself introduced pictures of the railroad. A witness from the vicinity saw the name of the defendant railroad on the engine in question. Lake Erie & W. Railway Co. v. Carson, 4 Ind.App. 185, 30 N.E. 432; East St. Louis Connecting Railway Co. v. Altgen, 210 Ill. 213, 71 N.E. 377; Peabody v. Oregon Railway & Navigation Co., 21 Or. 121, 26 P. 1053, 12 L.R.A. 823; Brooks v. Mo. Pac. Ry. Co., 98 Mo.App. 166, 71 S.W. 1083; 74 C.J.S. Railroads § 374.
Second: The defendant in its brief says:
"* * * his (driver's) negligence was imputable to his wife on the theory of a joint enterprise, since the evidence disclosed that they were going to Pittsfield to obtain groceries and his negligence was imputable to the children on the ground that he was their guardian and that his negligence was imputable to them."
The argument is not sound. There is no evidence of joint control of the automobile. The husband was the driver; his wife a passenger. The children were not infants unable to care for themselves. There was no imputed negligence under the circumstances. Illingworth v. Madden, 135 Me. 159, 166, 192 A. 273, 110 A.L.R. 1090; Gravel v. LeBlanc, 131 Me. 325, 162 A. 789; Ham v. Maine Cent Railroad Co., 121 Me. 171, 177, 116 A. 261; Whitman v. Fisher, *435 98 Me. 575, 57 A. 895; State v. B. and M. R. R. Co., 80 Me. 430, 15 A. 36.
Without reaching into detail, the jury could have found as follows: Distances and directions are given approximately. The collision took place at a grade crossing near Winnecook station between Burnham and Unity about noon on a misty, foggy, wet day in February 1956. The track runs north and south and the highway east and west. Neil characterized the visibility, or lack of visibility, in this testimony:
"Q. You looked up in that direction?
"A. Yes. It was kind of misty and foggy.
"Q. On account of the mist and fog you might not have been able to see the train which was there?
"A. Yes."
The plaintiff driver, who lived 400 feet east of the track, started with his family westerly to cross the track on his way to Pittsfield. On the front seat were the driver, his wife Carmelita in the middle, and his daughter Rita on the right, and in the rear of the car was his son Neil. The road was icy and slippery. There were railroad signs of "R. R." or "Railroad Crossing" a few feet westerly of the driver's home and also a few feet from the track. There were no gates or automatic signals at the crossing.
The track runs on a straight course for 1500 feet north of the crossing which is visible for the entire distance. At about 1000 feet from the crossing is a whistle and bell sign. From 200 feet easterly of the track an approaching train would be visible from 400 or 500 feet north of the crossing.
The plaintiff testified in substance that while proceeding at 10 miles per hour he looked toward the north for approaching trains when he was 300 feet from the crossing, saw nothing, and continued at the same speed without stopping; that he heard no bells or whistles; that when his car was on the track his son called, "Daddy, the train," and his wife said, "Step on it"; that the wheels spun and he was unable to escape.
His wife, admitting she was no judge of distances, said she looked for the train apparently at about the place her husband looked; that she heard neither bell nor whistle, and that the first warning came from the son Neil when the car was on the track. Rita at no time saw the train. Neil, on the rear seat, with visibility impaired as stated, first observed the train when the car was on the track. There was further evidence from persons in the neighborhood that they heard neither bell, whistle, nor horn.
The train consisting of a locomotive with 14 freight cars came to a stop with the rear of the train 280 feet south of the crossing.
There were admitted in evidence by agreement as part of the plaintiffs' case, statements given by the engineer and fireman on the train to a member of the State Police who investigated the accident. Neither the engineer nor the fireman took the stand. The engineer, who was on the right side of the engine, gave his speed between 20-25 miles per hour. The fireman said, "The horn and bell was going from whistling post, thousand feet from crossing"; that when the train was about 50 feet north of the crossing he observed the plaintiffs' car about 110 feet easterly with a woman "looking at us"; that he thought the car would stop and said nothing to the engineer.
The jury, as we have seen, could have found that no bell was rung, or whistle blown, or horn sounded by the train at the whistle marker, or as it continued to the crossing. Failure to give such a warning would be a violation of statute and accordingly evidence of negligence. R.S. c. 45, § 73. The jury could also on this issue have considered the speed of the train, particularly in view of the poor visibility. In *436 short, it was for the jury to determine whether the train as it came upon the crossing and struck the car was being operated negligently or in the exercise of due care.
The issue of contributory negligence must be explored with reference to each plaintiff. We are mindful that the train has the right of way, and that a collision at a crossing is prima facie evidence of negligence on the part of the driver of a car. Hesseltine v. Maine Cent. Railroad Company, 130 Me. 196, 154 A. 264.
The driver, in our opinion, must be held to have been contributorily negligent as a matter of law. It was his duty to look and listen as he approached the crossing, and to see and hear what a reasonably prudent man under the circumstances should have seen and heard. From a distance of 300 feet from the crossing it does not appear that he took even a second glance. In the light of his speed, and of the mist and fog, due care required that he continue to keep watch in approaching the track. If he had been observant, we are convinced he would have seen the train in time to have stopped his car short of the track, or to have increased his speed sufficiently to have passed safely beyond.
The driver's case is not saved by application of the "last clear chance" doctrine. The rule is stated in Kirouac v. Androscoggin & K. Railway Co., 130 Me. 147, 149, 154 A. 81, as follows:
"The plaintiff may still recover in spite of his agent's negligence, if there came a time prior to the collision, when his driver could not, and the defendant's motorman could, by the exercise of due care, have prevented the accident. * * * If the negligent operation of the truck continued to the moment of the collision, or for such a period of time that the motorman could not thereafter by the exercise of due care have stopped his car before the crash, there can be no recovery."
See also Jordan v. Maine Central Railroad Co., 139 Me. 99, 27 A.2d 811; Collins v. Maine Central Railroad Co., 136 Me. 149, 4 A.2d 100.
In our opinion the evidence would have warranted a finding of due care on the part of Mrs. Flood and the children. Mrs. Flood was a passenger in the car, and had no control over its operation by her husband. She was under a duty of course to exercise due care for her own safety. Did she act as the reasonably prudent person under the circumstances? The extent to which she could properly rely upon the driver, and the extent to which she should have watched for approaching trains and have warned the driver of dangers, involve questions of fact for the jury in resolving the issue of due care on her part. Like considerations apply in the cases of the children. Was the nine year old negligent in not seeing and not warning? Would we expect a different standard of conduct of a reasonably prudent thirteen year old passenger in the rear seat of a car driven by his father? Again, these are questions for the jury.
In reaching this conclusion, we in no way intimate that a jury would or should find for Mrs. Flood and the children. The issue here is simply whether the plaintiffs are entitled to have a verdict of the jury. Illustrative railroad crossing cases on contributory negligence in different settings of fact are: Hesseltine v. Maine Cent. Railroad Company, supra; Ham v. Maine Cent. Railroad Co., supra.
The entry will be
In the cases of Carmelita Flood, Neil N. Flood pro ami, and Rita M. Flood pro ami, exceptions sustained.
In the case of Lester M. Flood, exceptions overruled.