**Franklin H. HAMMOND and
Stella Hammond**

v.

**MAINE CENTRAL RAILROAD.**

Supreme Judicial Court of Maine.

Aug. 9, 1978.

Hart, Stinson & Lupton, P. A. by Ronald W. Lupton (orally), Bath, for plaintiffs.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster by Ralph I. Lancaster, Jr. (orally), David T. Flanagan, Portland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., and DUFRESNE, A. R. J.

NICHOLS, Justice.

The Plaintiffs, Franklin and Stella Hammond, commenced this action for damages against the Defendant, Maine Central Railroad, as the result of a collision on June 24, 1975 in Wiscasset between one of the Defendant's trains and a van operated by Mr. Hammond. Mrs. Hammond joined in this action seeking damages for loss of consortium.

At pre-trial conference, in an effort to simplify the issues, M.R.Civ.P. 16(c)(2)(1), the parties stipulated (1) that the crossing where the collision occurred was "a private crossing under the laws of Maine"; and (2) that there was "no evidence of willful or wanton *conduct* [sic] on the part of the Defendant." These stipulations brought into sharp focus for the Superior Court in Lincoln County the question of the standard of care owed by the Defendant to the Plaintiff.

Concluding that Mr. Hammond was a trespasser "or at best, a bare licensee" on the crossing, the presiding justice ruled that the Defendant owed only the duty to refrain from willful or wanton misconduct. He therefore ordered the cause dismissed, in light of the stipulation that there was no evidence of such conduct.

The Plaintiffs have appealed, and their main point on appeal is an invitation to this Court to abrogate the common law distinctions between the duty of care owed as dependent on the status of a plaintiff on the property of a defendant. They ask us to abandon the classifications of invitee, licensee and trespasser, and adopt instead a single standard of reasonable care under all the circumstances of a given case.

We decline their invitation as premature [1] and unnecessary to a decision in this case.[2] We sustain their appeal on other grounds.

The crossing where the collision occurred is on the Lewis Road in Wiscasset, which proceeds from Route 1 as a public way, but which apparently ceases to be a public way prior to reaching the crossing. The crossing, which dates back in some form to 1870, was graded and planked, and there were no barriers or signs prohibiting the public from crossing. The Defendant's employees performed periodic maintenance on this section of track, although the record does not reflect the nature and extent of work performed at this particular crossing.

At least one house is beyond the crossing and the Defendant's employees had upon occasion observed tire tracks or other signs that the crossing was used. In 1953 the same crossing had been the scene of another collision where one person was killed and three people were injured. However, the Defendant took no steps after that fatality to secure the crossing, nor did it change its practice that the train whistle or bell was not to be sounded.

1. Since the present law is judge-made, we shall have no hesitancy in re-examining these doctrines in an appropriate case, unless there is reasonably swift legislative action indicative of an intent to preempt the field. *Cf. Davies v. City of Bath*, Me., 364 A.2d 1269 (1976).

2. For one court's view of the steps necessary to preserve this issue for appellate scrutiny in the ordinary course, *see Sherman v. Suburban Trust Co.*, 282 Md. 238, 384 A.2d 76, 83 (1978).

**504**

Mr. Hammond's deposition testimony indicates that, at the time the collision occurred, he was returning from the shore at the end of the road where he had been because he had erroneously believed that one of his worm diggers was stuck. Mr. Hammond, a long-time area resident, remembered being on the Lewis Road once about ten years previously. He stated that he thought Lewis Road was a public way, or at least that the public was not excluded.

Although the Plaintiffs' main argument on appeal is directed to the issue of whether the common law should be changed, they have also made the alternative argument that the duty of care owed to Mr. Hammond at this private crossing was one of ordinary care in any event. The Defendant responds that this argument is foreclosed to the Plaintiffs by reason of the stipulation that the crossing was a private one. In the Defendant's view, the Plaintiff has in effect conceded that he was either a trespasser or at best a bare licensee and that, applying traditional doctrine, the Defendant's duty was only to avoid willful or wanton misconduct, a theory foreclosed by the second stipulation.

■ We reject the Defendant's contention that this issue is foreclosed to the Plaintiffs. Our law has long been recognized that a railroad crossing may be a private one in law, yet a public crossing in fact. *Webb v. Portland & Kennebec Railroad Company*, 57 Me. 117, 129–130 (1869). The stipulation is that the crossing was "private . . . under the laws of Maine." Hence, the Plaintiffs are not now prevented from arguing that the crossing was public in fact.

■ Neither the presiding justice nor the parties have attempted to bring this pre-trial dismissal on the merits within any particular rule of civil procedure. Generally speaking, M.R.Civ.P. 56, governing summary judgment, is the primary means of disposing of civil cases on the merits prior to trial. When a summary judgment motion is brought before the court, the presiding justice must make a determination of whether there is a genuine issue as to any material fact, and he must not attempt to resolve any such issue that exists.

Here the parties apparently viewed the question of Mr. Hammond's status upon the crossing as purely a question of law. If that were the case, then summary judgment, whether so named or not, might be proper.

■ However, the question of the Plaintiff's status cannot be resolved as a matter of law. Rather, a factual determination, to be made in light of the applicable law, is necessary. *See Collins v. Maine Central Railroad Co.*, 136 Me. 149, 153, 4 A.2d 100 (1939). Therefore, the dismissal, whether viewed as summary judgment or as some other procedural vehicle, was inappropriate in this case.

■ A railroad owes a duty of ordinary care at a private crossing where there has been an implied invitation to the public to use the crossing, but acquiescence alone is not enough to establish an implied invitation. *Collins v. Maine Central Railroad Co.*, supra, 136 Me. at 153, 4 A.2d at 103. However, ". . . there may be facts as to its construction, maintenance, and use that will warrant a jury in finding such an invitation and such facts present . . . 'a question for the jury under proper instructions . . . .'" *Id.*

Illustratively, where a private crossing ". . . was freely, if not frequently, used by all having occasion . . .," it was held in *Boothby v. Boston and Maine Railroad*, 90 Me. 313, 317, 38 A. 155, 156 (1897) that, under the circumstances of the case, the Plaintiff's intestate, in crossing the tracks, ". . . was not such an offender against the law, or the defendant as to relieve the defendant from the duty of due care."

When a plaintiff walks *along* the tracks, *Copp v. Maine Central Railroad Co.*, 100 Me. 568, 62 A. 735 (1905), or attempts to cross the track where the railroad maintains no crossing whatsoever, *Willey v. Maine Central Railroad Co.*, 137 Me. 223, 18 A.2d 316, aff'd on reh., 137 Me. 336, 24 A.2d 603, *cert.*

*den.*, 314 U.S. 612, 62 S.Ct. 85, 86 L.Ed. 492 (1941), different considerations apply. These two cases, upon which the Defendant places great reliance, have no application to the facts as thus far developed with reference to this crossing.

The entry is:

Appeal sustained.

Judgment of dismissal set aside.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

McKUSICK, C. J., and DELAHANTY, J., did not sit.

DUFRESNE, A. R. J., sat by assignment.