JOHN J. DIXON, Admr., *vs.* GUSTAVUS SWIFT, and others.

Cumberland.    Opinion December 8, 1903.

*Negligence,* Duty of property owners to employees and visitors.
*Licensee,* Want of due care.

It is well settled law that owners of property on which dangerous conditions exist, are liable in damages to persons in their employ who are injured thereby, when ignorant of the danger and in the exercise of due care.

In such case persons going upon the property on business of the owner are deemed to do so by an implied invitation of the property owner, who owes them the duty to make their premises and entrance thereto reasonably safe, also to give ample warning of their dangerous condition.

These duties of the property owner are not extended to a trespasser or mere licensee. Such person must take the premises as they are in fact, and he assumes all risk of injury from their condition.

Upon the question whether the plaintiff's intestate, who lost his life by falling into a tank in the defendants' premises and left open by the negligence of their servants, went upon the premises as a trespasser, licensee, or by the defendants' invitation, it appeared that he was not there on any business connected with the defendants; that he had a gratuitous message to deliver to an employee there but having no relation to the business conducted there; that he was calling socially upon his acquaintances, and at best was indulging his curiosity to look over the place where he had been on previous occasions.

*Held;* that he was a mere licensee, and the defendants owed him no duty except that they should not wantonly injure him; also that the negligence the defendants' servant in leaving the tank, with its heated contents open and exposed, imposed no liability upon them to this licensee, and that the case fails to show evidence of an invitation to the intestate to enter or be on any part of the defendants' premises, or that he exercised due care.

On report.    Judgment for defendant.

Action on the case for damages for negligence of the defendants, resulting in injuries to the plaintiff's intestate on the seventh day of October, 1901, which caused his death on the following day.

From the evidence offered by the plaintiff it appeared that the defendants at that time owned, managed and controlled a rendering plant at East Deering, and were in the business of rendering tallow, etc. Their factory was located on the easterly side of Presumpscot Street, and about thirty rods from the street. The premises were unenclosed and an open driveway led from Presumpscot Street to the factory. The engine-house was situated on the northerly end of the factory building and the two were connected by a narrow covered passageway about 7.9 feet wide, from which passageway there were entrances both to the factory and the engine-house. There were doors leading into the passageway both from the easterly and westerly ends. In the passageway were four tanks or vats, three of which were along the southerly side and one directly in front of the door at the easterly end, these tanks being used for the reception of hot fat. The dimensions of the latter tank were 5.66 feet by 3.8 feet, and 3.1 feet in depth, and it was covered by a wooden cover hung on hinges, which, when opened, rested against the northerly side of the passageway. This passageway was in common use for all persons, both employees and others, for entrance to the factory and to the engine-house. There were no signs either at the entrance to the premises, or at the door of the factory, or anywhere on the premises forbidding persons to go there.

On said seventh day of October, Michael L. Quigley, an employee of said defendants, whose duty it was to skim the fat in said vat, opened the cover of the vat for the purpose of skimming it, leaving the door opening into the easterly end of the passageway open, or at least unfastened, and immediately returned to the main building to

perform other work, leaving the open vat and the door unguarded and with no notice on the door, or elsewhere, to warn any person approaching of danger.

At the time when the vat was opened, plaintiff's intestate, William J. Dixon, was on the premises and immediately thereafter started from the stable of the defendants to go into the engine-house and through the covered passageway. Reuben Misener, an employee of said defendants, who was then at said stable, and who was acquainted with the location of the vat in front of the door of the passageway, knew that Dixon was going into the engine-house but gave him no warning of the existence or location of the vat.

As Dixon approached the easterly door of the passageway and was near to it, one Melvin Bell, the engineer of defendants, who was standing on the platform on the easterly side of the building and within six feet of Dixon, and who knew that the vat was open and the door unfastened, spoke to Dixon and at the same time saw that he was going directly toward the passageway, but did not warn him of the danger of entering by said door.

Dixon stepped into the door, stopped and looked into the passageway, but, failing to see the open vat, stepped forward and, at the first step, plunged into the open vat, which was filled or nearly so, with fat heated to a temperature of about two hundred degrees. He died on the following morning from the injuries so received.

Dixon's purpose in entering the premises was to deliver a business message to one Henry Hawkins, the fireman of the defendants and in their employ in the engine-house. This message did not pertain to the business of the defendants but was a message sent by Hawkins' brother through Dixon.

The evidence introduced by the defendants tended to show that Dixon and one Sanborn were merely loafing on the premises when the accident happened. Dixon himself was acquainted with the buildings and in particular with the interior of the passageway. Once he entered the passageway by the westerly door and stood about fifteen minutes while the vats were being skimmed, watching the process; he went up to the Rendering Company now and then in a friendly way. He never worked for the company. Sanborn testi-

fied that Dixon said, when they met on the morning of the accident, "Let's go up to the Rendering Company. I want to see some of the boys up there" and that accordingly he went up there "merely loafing around."

On the day Dixon left Nashua, N. H. for Portland, one Henry Hawkins asked Dixon to take a message to Hank Hawkins; in his own words, "I told him to tell Hank to send me up a barrel or a half a barrel of clams." Hawkins went on to state that clams were sometimes dug by the men on the flats near the Rendering Company.

Misener with whom Dixon talked in the stable for about fifteen minutes testified that Dixon and Sanborn were wandering leisurely about the premises of the Rendering Company with no particular object except to see Hank Hawkins. The defendants further claimed that there was no evidence that either Dixon or Sanborn had, or claimed to have, on the day of the accident any business connected with the business carried on by the defendants at the Portland Rendering Company, but that they went up there merely "to see some of the boys."

*F. V. Chase, E. H. Mason, S. L. Hallinan,* for plaintiff.

Counsel cited: *Tobin* v. *P. S. & P. R. R. Co.,* 59 Maine, 183, 188; *Sweeny* v. *Old Colony R. R. Co.,* 10 Allen, 368; *Zoebisch* v. *Tarbell,* 10 Allen, 385; *Knight* v. *P. S. & P. R. R. Co.,* 56 Maine, 234, p. 244; *Cooley* v. *Hill,* 93 E. C. L. 556; *Low* v. *Grand Trunk Ry.,* 72 Maine, 313; *Parker* v. *Portland Pub. Co.,* 69 Maine, 173; *Pomponio* v. *R. R. Co.,* 66 Conn. 528; *Corrigan* v. *Union Sugar Refinery,* 98 Mass. 577; *Smith* v. *London & St. Katharine Docks Co.,* 3 Law Rep., C. P. Cases, 327; *Cooley* v. *Hill,* 4 C. B. N. S. 556; *Carleton* v. *Franconia Iron & Steel Co.,* 99 Mass. 216; *Stewart* v. *Harvard College,* 12 Allen, 58, p. 67; *Oliver* v. *Worcester,* 102 Mass. 489, pp. 496, 502; *Barry* v. *New York, Etc. R. R.,* 92 N. Y. 287; *Beck* v. *Carter,* 68 N. Y. 293; *Ryder* v. *Kinney,* 62 Minn. 85; *Engel* v. *Smith,* 82 Mich. 1; *Hydraulic Works Co.* v. *Orr,* 83 Pa. St. 332; *Schilling* v. *Abernethy,* 112 Pa. St. 437; *U. P. Ry.* v. *McDonald,* 152 U. S. 262; citing with approval *Lynch* v. *Nurdin,* 1 Q. B. 29; *R. R. Co.* v. *Stout,* 17 Wall. 657; and *Keefe* v. *Ry. Co.,* 21 Minn. 207; *Bird* v. *Holbrook,* 4 Bing. 628; *State* v. *R. R.,* 52

N. H. 528; *Foren* v. *Rodick*, 90 Maine, 283; *Pollard* v. *M. C. R. R.*, 87 Maine, 55; *Atwood* v. *Bangor, Etc. Ry. Co.*, 91 Maine, 399; *Com.* v. *M'Pike*, 3 Cush. 181; *State* v. *Wagner*, 61 Maine, 178, p. 193; *State* v. *Walker*, 77 Maine, 488; Greenl. Ev. (16 ed.) Vol. 1, §§ 162f-162g.

*C. F. Libby, F. W. Robinson and L. Turner*, for defendants.

Counsel cited: In *Campbell* v. *Portland Sugar Co.*, 62 Maine, 552; *Low* v. *G. T. R. R.*, 72 Maine, 313, 321; *Plummer* v. *Dill*, 156 Mass. 426; *Redigan* v. *B. & M. R. R.*, 155 Mass. 44; *Cowen* v. *Kirby*, 180 Mass. 504, 506; *Parker* v. *Portland Publishing Co.*, 69 Maine, 173; *Holmes* v. *N. E. R. W. Co.*, 4 Ex. L. R. 257; *Cusick* v. *Adams*, 115 N. Y. 55, 59; *Plummer* v. *Dill*, 156 Mass. 426; *Severy* v. *Nickerson*, 120 Mass. 306; *Fitzpatrick* v. *Cumberland, Glass Co.*, (Sup. Ct. N. J. 1898), 4 Am. Neg. Rep. 193; *Clark* v. *Manchester*, 62 N. H. 577, 580; *Oil Co.* v. *Morton*, 70 Tex. 401; *Lackat* v. *Lutz*, 94 Ky. 287; *Woolwine's Admr.* v. *Ches. & Oh. Ry.*, 36 W. Va. 329; *Moffatt* v. *Kenny*, 174 Mass. 311, 315; *Zoebisch* v. *Tarbell*, 10 Allen, 385; *Victory* v. *Baker*, 67 N. Y. 366; *Benson* v. *Baltimore Traction Co.*, 77 Md. 535, 20 L. R. A. 714; *Reardon* v. *Thompson*, 155 Mass. 472, 474; *Redigan* v. *R. R. Co.*, 155 Mass. 44; *Stevens* v. *Nichols*, 155 Mass. 472, 474.

. SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

STROUT, J. Defendants were the owners operating a rendering plant at East Deering, and were in the business of rendering tallow, etc. The premises were on the side of Presumpscot Street, and about thirty rods from the street. They were unenclosed, and an open driveway led from the street to the factory. The engine-house was at the northerly end of the factory building, and the two were connected by a narrow covered passageway, seven and nine-tenths feet wide. At its easterly end there was a door five and nine-tenths feet high and two and twenty-five hundredths feet wide. The threshold was one and one-tenth foot from the ground. This door had no latch; it swung outward and was fastened on the inside by a rope

wound upon a nail in the casement.    From the southerly side of the passageway a door led to the main building, and opposite that was a door to the engine-room.    On the southerly side of the passageway there were four tanks, one of them in front of the easterly door to the passageway, and about one foot distant therefrom; it was a little more than five feet by three and one-half. feet in size, and three feet deep.    The top of this tank was one and four-tenths feet above the cement floor, and over it was a cover with a hinge, which could be turned up when desired for the purposes of the company.    When the cover was down, it was three-tenths of a foot below the threshold of the easterly door.

On the day of the accident, November seventh, 1901, this tank contained about three feet of water, covered by fat, heated to a temperature of about 200 degrees.    A few minutes before the accident a servant of defendants had raised the cover of this tank, for the purpose of skimming the fat, and went away to attend to some other business, leaving the cover up and the tank uncovered.    While the testimony is conflicting, the weight of evidence is, that the easterly door in close proximity to this tank was then open,—certainly not fastened.    No sign or other warning of danger was posted at that door.    It was occasionally used by others than servants of the defendants.

William J. Dixon, plaintiff's intestate, went in through this easterly door, and immediately stepped or fell into the tank, and was so badly scalded and burned that he died the following day.    Plaintiff seeks to recover damages for the injury.

The conditions existing there at that time were very dangerous. If the deceased had gone there upon business, connected with the company, and was ignorant of the exposed tank, and in the exercise of due care, and had received an injury therefrom, the defendants would unquestionably be liable.    In such case, he would have been there by the implied invitation of defendants; and to him they would have owed a duty to make the entrance to their works reasonably safe, or to have given ample warning of their dangerous condition. No duty was owed to a trespasser or mere licensee, save to abstain from wanton injury.    Such person must take the premises as they are in fact, and he assumes all risk of injury from their condition.    So

held in this State in *Parker* v. *Portland Publishiny Company*, 69 Maine, 173, 31 Am. Rep. 262; *Campbell* v. *Portland Sugar Company*, 62 Maine, 561. We do not understand that the learned counsel for the plaintiff claims otherwise.

The question recurs, whether plaintiff's intestate was there, as a trespasser, licensee, or by invitation of defendants. It is not claimed that he was on any business connected with that of the defendants. He had a gratuitous message to deliver to one of defendant's servants, but it had no relation to the business there conducted. He was a resident of another state, on his vacation at the time. He was acquainted with one or more of defendants' servants employed at the rendering-works, and presumably intended to call upon them socially. At best, he was a mere licensee, indulging his curiosity to look over the plant, where he had been on previous occasions. Toward him defendants owed no duty, except they should not wantonly injure him. The negligence of defendants' servant in leaving that tank, with its heated contents, open and exposed, imposed no liability upon them to this licensee. Nothing appears in the case which can be construed as an invitation to the intestate to enter that door, or to be on any part of defendants' premises. The cases cited by plaintiff, such as *Low* v. *Grand Trunk Railway*, 72 Maine, 313, 39 Am. Rep. 331; *Stratton* v. *Staples*, 59 Maine, 94, and *Campbell* v. *Sugar Co.* supra, were all cases where the party entered by the implied invitation of the proprietor. To such, of course, the duty was owed that the premises should be reasonably safe.

Upon the ground of due care by the intestate, it is difficult to perceive that it was exercised by him. The day was clear and bright; the door was open; the tank cover raised and leaning against the wall, a few inches from the entrance. If he had looked at all, it seems incredible that he would not have seen that open tank, directly in front of him, and about one foot distant. It is argued that the color of the hot fat was so near the color of the greasy cement floor, that he was deceived. That is possible, but it seems improbable.

But upon the ground that he was a mere licensee, to whom no duty was owed, there must be,

*Judgment for defendants.*