GEORGE KAPERNAROS, Admr., *vs.* BOSTON & MAINE RAILROAD.

York.   Opinion December 18, 1916.

*Negligence on part of parents of children. Trespassers on railroad tracks. Revised Statutes, Chapter 52, Section 26, known as the Railroad Fence Statute, interpreted.*

This is an action of the case brought by the plaintiff, as administrator of James Kapernaros, for the recovery of damages arising from the instantaneous death of his intestate, occasioned by a locomotive of the defendant, under the provisions of R. S. chapter 89, sections 9 and 10. Exceptions to order of nonsuit.

1. Section 26 of chapter 52 of the Revised Statutes does not require railroads to fence their locations against the intrusion of human beings, whether adults or infants.

2. The evidence in support of the propositions that the engineer failed to seasonably see the child upon the track, or, seeing him, negligently failed to avoid him, is insufficient to support a verdict for plaintiff.     .

Action on the case brought by plaintiff, under the provisions of Revised Statutes, chapter 89, sections 9-10, to recover for the death of the plaintiff's intestate. Defendant pleaded general issue. and also filed a brief statement setting forth, as matter of defense, that the plaintiff's intestate was a trespasser at the time he received the injuries, and was not in the exercise of due care, and that the parents of the child were also negligent and that said negligence and lack of due care upon the part of the parents of the plaintiff's intestate contributed directly to the injury which caused the plain-

tiff's intestate's death. At the conclusion of the plaintiff's case, counsel for defendant moved that nonsuit be granted. Nonsuit ordered, to which ruling plaintiff filed exceptions. Exceptions overruled.

Case stated in opinion.

*John G. Smith,* for plaintiff.

*George C. Yeaton, and Emery & Waterhouse,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, PHILBROOK, JJ.

BIRD, J. This is an action of the case brought by the plaintiff, as administrator of James G. Kapernaros, for the recovery of damages arising from the instantaneous death of his intestate under the provisions of R. S., c. 89 §§ 9 and 10. At the close of plaintiff's evidence, a nonsuit was ordered and the plaintiff excepted to the order.

The evidence discloses that intestate, an infant slightly less than two years old, was upon the defendant's location engaged in playing between the rails of its track. While thus occupied, the regular passenger train of defendant was approaching from the east and, although efforts were made by the locomotive engineer to stop the train, he was unsuccessful and the child received the injuries from which he died. The place where the child was injured was not a public crossing nor was it in the near neighborhood of one. The plaintiff urges that the child went upon the location by pursuing a well defined path leading from the lot occupied by his parents across land contiguous to the latter.

The first count of the declaration alleges that, on the twenty-fifth day of December, 1913, defendant, being possessed and in operation of a railroad running through improved land in Saco between Wharf street and Front street, contrary to law, failed to maintain a fence on the northerly side of its land, between these streets and that, by reason of such failure, the plaintiff's intestate without the fault or negligence of his parents wandered on to the track of defendant and, while in the exercise of due care, was struck by a locomotive of defendant and killed.

The statute invoked by the pleader is now R. S., c. 52, § 26. "Where a railroad passes through enclosed or improved land, or wood-lots belonging to a farm, legal and sufficient fences shall be made on each side of the land taken therefor  .  .  .  and such fences shall be maintained and kept in good repair by the corporation."

Violation of the requirement to maintain and repair is punishable upon indictment by fine. This provision of statute was originally enacted in 1842. (Pub. Laws, 1842, c. 9, § 6.) Since the day it became law, it has been construed as an act for the protection of trains from collision with domestic animals and of their owners from the loss or injury of such animals. *Norris* v. *Androscoggin R. R. Co.,* 39 Maine, (1855) 273, 277-278; *Estes* v. *A. & St. L. R. R. Co.,* 63 Maine, (1873) 308, 310; *Gould* v. *B. & P. R. R. Co.,* 82 Maine, (1889) 122, 126; where it is said "that the primary and perhaps the only purpose of the statute is to prevent the escape of domestic animals, both for their own protection and that of the public." *Allen* v. *Railroad,* 87 Maine, (1895) 326; *Cotton* v. *R. R. Co.,* 98 Maine, (1904) 511, 516. See also *Wilder* v. *M. C. R. R. Co.,* 65 Maine, (1876) 332, 340. No reported case, in this State, is found which holds otherwise nor is the court aware of any case in which the statute has been invoked for the protection of men or children. Provisions of similar character have received like construction in New Hampshire, *Hughes* v. *Railroad,* 71 N. H., 279, 284 and in Massachusetts, *Menut* v. *B. & M. R. R.,* 207 Mass., 12, 19, 20.

In 1873 by c. 126, Pub. Laws "any person who shall take down or intentionally injure any railroad fence, which has been erected to protect the line of any railroad in this State, or shall turn any horse, cattle or other animals, upon or within the enclosures of said railroad is rendered subject to criminal prosecution. Without material change it has now become § 28, c. 52, R. S.

We are forced to conclude that upon the first count the nonsuit was properly ordered.

The varying decisions upon the various provisions of the different states, upon the duty of railroads to fence are collected and arranged in the note following *Bishof* v. *Illinois Southern Ry. Co.,* 13 Ann. Cases, 185.

The two remaining counts of the declaration allege the presence of plaintiff's intestate upon the track of defendant without fault of his parents, that he was in the exercise of the care due from one of his immature years and was killed by the locomotive of defendant.  The second count declares that the place, near a switch, where the child was struck was such that the engineer had reason to anticipate the presence of children upon the track, and alleges, as the cause of the accident, the neglect of the engineer to see the child when he should and could have seen him.  The negligence set out in the third count is the negligent operation of the train by the engineer after he saw the child.

It is manifest that the child was a trespasser upon the track of defendant corporation.  This from our conclusion upon the exceptions under the first count and in view of these provisions of statute: "No railroad corporation shall be liable for the death of any person walking or being upon its road contrary to law. . . . R. S., c. 52, § 76.  "Whoever without right, stands or walks on a railroad track—forfeits not less than five nor more than twenty dollars to be recovered by complaint."  Id., § 77.

Being a trespasser, the defendant owed the plaintiff no duty save to refrain from wantonly or wilfully injuring him.  *Russell v. M. C. R. R. Co.,* 100 Maine, 406, 408; *Elie* v. *Street Ry. Co.,* 112 Maine, 178, 180.  The burden of showing the breach of such duty is upon the plaintiff.

The evidence tending to show that the engineer had reason to anticipate that children might be on the track at or near the spot where the child was, we must hold to be insufficient to sustain the proposition.

The gravamen of the second count is the failure of the engineer to see the child when he could and should have done so and of the third count that, seeing the child, he so carelessly and negligently managed the train as to kill the child.

The evidence upon both these matters is very meagre.  The only eye witness of the casualty who testified is defendant's gate keeper at the Main street crossing, which must be at least three hundred feet westerly of the place where he first saw the child.  The Saco

station, where the train was scheduled to stop, is some distance west of Main street. He states that the bell at his gate house rang indicating the approach of the train; that in his judgment the automatic appliance which causes the bell to ring is less than a quarter of a mile from the gate house; that he lowered his gate and then looked down the track easterly towards the approaching train; that he saw near the switch an object which he thought was a piece of paper; that later the object moved and he recognized it as a child; that the train approached the switch upon a curve and until it had proceeded westerly upon the curve for some distance, he could not see it; that before he could see it, he heard the alarm whistle which continued to sound after the train came into view; and that, as the train came into sight, the emergency brake was applied. There is also testimony that the view of the track is unobstructed for a distance of over five hundred feet easterly of the switch and that the train was two hundred feet westerly of the switch before it stopped. But all this testimony, taken as true, falls far short of evidence upon which a jury could find wanton or reckless conduct, either in failing to seasonably see the child or, when seen, in failing to use all efforts to stop the train. The presumption is that the engineer did his duty and it is inconceivable that any man would not do all within his power to avoid the commission of such an injury as befell plaintiff's child. To say otherwise upon the evidence would be to substitute for proof, guess or conjecture. *Russell* v. *M. C. R. R.,* 100 Maine, 406, 409; *Titcomb* v. *Powers,* 108 Maine, 347, 349. See also *Leighton* v. *Wheeler,* 106 Maine, 450, 453, 455, 456.

> *The exceptions must be overruled.*
> *So ordered.*