Cheryl D. BONNEY, as Personal Representative and Administratrix of the Estate of Rodney Bonney, Plaintiff, Appellee,

v.

CANADIAN NATIONAL RAILWAY COMPANY, Defendant, Appellant.

No. 85–1635.

United States Court of Appeals, First Circuit.

Heard April 10, 1986.

Decided Sept. 5, 1986.

John H. Montgomery with whom Nicholas S. Nadzo, Lisa R. Gorman and Jensen Baird Gardner & Henry, Portland, Me., were on brief, for defendant, appellant.

---

Paul F. Macri with whom William D. Robitzek and Berman, Simmons & Goldberg, P.A., Lewiston, Me., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, and COFFIN and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff-appellee Cheryl Bonney brought a tort action seeking damages for the death of her husband, Rodney Bonney, which resulted from his attempt to rescue a 15-year-old trespasser who fell from a railroad bridge under the control of defendant-appellant Canadian National Railway Company (the "Railway"). The Railway now appeals from the judgment entered against it in the United States District Court for the District of Maine, 613 F.Supp. 997. Applying Maine law, we hold that the Railway did not violate any duty to the trespasser by failing to make the bridge safe for pedestrians. It did not, therefore, violate any duty to the rescuer, Bonney. We accordingly reverse.

## I.

The relevant facts, based largely on the parties' agreed statement of facts, are as follows:

The railroad bridge, leased to the Railway, spans the Androscoggin River between Lewiston and Auburn, Maine. The bridge is a concrete and steel structure, approximately 410 feet long, with tracks about 50 feet above the surface of the river. The tracks sit on railroad ties which are spaced several inches apart and which extend about three feet on either side of the tracks. Apart from widely spaced steel supports, there is nothing on the sides of the ties to prevent a pedestrian from falling off the bridge into the river below.

While there is a bridge designed for cars and pedestrians a short distance down the river, residents in the area frequently used the railroad trestle as a shortcut between Lewiston and Auburn. The Railway had been aware of this practice for decades. At times, the Railway had placed "No Trespassing" signs on the bridge. The signs, however, were often removed by vandals, and none was posted the day of the accident. In 1969, the Railway made an unsuccessful attempt to secure enforcement of existing Maine laws forbidding trespass on railroad property. Since then, the Railway has made no effort to prevent pedestrian traffic on the bridge.

On the night of April 6, 1981, 15-year-old Jonathan Thibodeau attempted to return from Auburn to his home in Lewiston via the railroad bridge. The area was dark and unlit except for a nearby bottle redemption center. The light was so dim that Thibodeau's companion, Mark Sheink, could not see whether anything was written on the trestle. Upon reaching the bridge, Thibodeau told Sheink that he was going to ride his bicycle across the bridge with the tires outside the rails. Sheink warned him not to do so, telling Thibodeau he would die if he attempted such a ride. Nonetheless, Thibodeau rode off ahead. Sheink soon heard a "cathump" and, after a pause, a splash. He then heard Thibodeau's cries for help from the river below.

Sheink ran to a nearby store for help. The first police officer to arrive, Rodney Bonney, swam out in an attempt to rescue Thibodeau. Subsequently, another officer, realizing that Officer Bonney and Thibodeau were in distress, swam out to assist them. Officer Bonney pushed Thibodeau toward the second officer who tried, unsuccessfully, to bring Thibodeau back to shore. Both Thibodeau and Officer Bonney drowned.

Cheryl Bonney brought this action against the Railway on January 12, 1983, seeking damages for the death of her husband, Officer Bonney.[1] The case was originally filed in Maine Superior Court; it was subsequently removed by the Railway to the federal district court under diversity

---

[1] Jonathan Thibodeau's mother, Gladys Thibodeau, also brought an action against the Railway, but her claims were settled before trial.

jurisdiction. Plaintiff argued that, even assuming Thibodeau was a trespasser, the Railway violated its duty to him to refrain from wilful, wanton or reckless conduct, and that this breach of duty caused the accident that invited Bonney's rescue attempt. Thus, plaintiff contended that the Railway was liable for Bonney's death. Even if the Railway did not violate a duty to Thibodeau, plaintiff further argued, the Railway breached an independent duty owed to Bonney as rescuer.

After a bench trial on June 19 and 20, 1985, the district court first determined that Thibodeau was a trespasser, rather than an implied licensee, on railroad property.[2] The court held the Railway liable for Bonney's death, reasoning that the Railway had violated its duty to Thibodeau—and by extension to his rescuer, Bonney—to refrain from wilful, wanton acts. The parties agreed that if liability were found, plaintiff would receive $635 for funeral expenses and $50,000 for loss of comfort, society, and companionship. In addition, the court awarded $538,787 in total pecuniary damages, and $100,000 for pain, suffering, and mental distress of decedent. Judgment was entered in the amount of $689,422. The Railway appeals.

## II.

If the Railway committed no tortious act as to Thibodeau, plaintiff cannot recover unless the Railway has some independent duty to Bonney, as rescuer, *see* section III, *infra*. On the other hand, if defendant violated a duty to Thibodeau, its liability may be extended for the rescuer's benefit, on the theory that defendant's tortious conduct created the situation which invited the rescue attempt, and that the attempt was a foreseeable consequence of defendant's actions. *See Hatch v. Globe Laundry Co.*, 132 Me. 379, 171 A. 387 (1934). Thus a central issue on appeal is whether the district court correctly held that the Railway

violated its duty to Thibodeau as trespasser.

■ Under Maine law, which is the applicable state law here, a landowner[3] owes no duty of care to a trespasser; its duty is simply to refrain from "wanton, wilful, or reckless acts." *Robitaille v. Maine Central Railroad Co.*, 147 Me. 269, 270, 86 A.2d 386, 387 (1952); *see also Willey v. Maine Central Railroad Co.*, 137 Me. 223, 226, 18 A.2d 316, 320, *cert. denied*, 314 U.S. 612, 62 S.Ct. 85, 86 L.Ed.2d 492 (1941); *Collins v. Maine Central Railroad Co.*, 136 Me. 149, 154, 4 A.2d 100, 103 (1939). The district court ruled that the Railway's "failure to take anything beyond token measures to prevent injury to pedestrians" evinced such a "callous indifference to a known condition of extreme danger to the public" as to violate even the minimum duty owed to trespassers. On appeal, defendant argues that the simple failure to make its premises safe for trespassers does not rise to the level of wanton misconduct forbidden under Maine law. We agree.

In reaching its conclusion that the Railway's failure to act constituted wanton misconduct in this case, the district court relied on a Maine case which defined "wanton misconduct" in the context of an automobile accident as "a reckless disregard of danger to others," *Blanchard v. Bass*, 153 Me. 354, 358, 139 A.2d 359 (1958), as well as W. Prosser, *The Law of Torts* § 34, at 184–85 (4th ed. 1971) (defining reckless acts as "highly unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent"). Holding under this standard that the Railway's failure to act displayed "a reckless disregard of danger to others," the court emphasized that the Railway had known "for decades" that the bridge was heavily used by pedestrians of all ages, especially children, and by bicyclists. Witnesses, including five for the railroad, testified that the traffic across the bridge was heavy, from twenty to fifty people on a

---

**2.** Plaintiff does not contest this characterization of Thibodeau on appeal.

**3.** While the Railway was lessor, not owner, of the railroad bridge, it conceded that its status was the same as an owner in this case.

"busy day," including "winos" and young adults coming from bars at night. Moreover, the court found that the bridge was clearly unsafe for pedestrian use: there were no guardrails, the spaces between the ties were irregular, making it easy to lose one's footing, and protruding between every few ties were large nuts-and-bolts that made walking even more treacherous. Knowing all this, the Railway made no effort to erect warning signs, barrier gates, guardrails, or walkways, even though the court found that the Railway's use of the bridge for railroad cars had dwindled to one "spotting" (or use) in 1982 and no observed crossing after that, up to the 1985 trial.

■ But while we accept the above findings, we do not read Maine case law as supporting a determination that the Railway's "failure to take anything beyond token measures to prevent injury to pedestrians" rose to the level of a "reckless act" violative of *a landowner's* duty towards trespassers. The *Blanchard* definition of "wanton misconduct" was not made in the context of a Maine trespass case, where a defendant normally owes no duty of care to a trespasser. Rather the *Blanchard* definition was tailored to an automobile accident case where the court could properly ask whether defendant's actions in causing a car accident rose to the level of wanton misconduct (or whether he was simply negligent), since defendant had in any event a duty to exercise due care in the operation of his car. Here, the dangerous condition of the bridge being open and obvious, *see*

*infra,* the landowner owed no duty to a trespasser to keep its premises reasonably safe. Absent a duty to act affirmatively,[4] we are reluctant to hold the Railway liable for failure to act under the "reckless disregard of dangers to others" standard in *Blanchard* and Prosser. Applying that standard to trespass cases would, we believe, improperly expand and transform the very limited duty towards trespassers that Maine imposes on landowners.

A trespasser in Maine is deemed to enter at his own risk, and "must take the premises as they are in fact, and he assumes all risk of injury from their condition." *Dixon v. Swift,* 98 Me. 207, 213, 56 A. 761, 763 (1903); *see also Meserve v. Allen Storage Warehouse Co.,* 159 Me. 128, 130, 189 A.2d 381, 383 (1963); *Foley, Malloy v. H.F. Farnham Co.,* 135 Me. 29, 34, 188 A. 708 (1936). Except in special circumstances not applicable here, a landowner is not required to use due care to maintain its premises reasonably safe for the benefit of trespassers. *Lewis v. Mains,* 150 Me. 75, 76–77, 104 A.2d 432, 434 (1954); *Nelson v. Burnham & Morrill Co.,* 114 Me. 213, 216, 95 A. 1029 (1915); *Dixon,* 98 Me. at 212, 56 A. 761; *see also Restatement (Second) of Torts* § 333 (1977).[5] This is particularly true where, as here, the dangerous condition of the land is open and obvious, and fully appreciated by the trespasser. *See Stanley v. United States,* 476 F.2d 606, 609 (1st Cir.1973) (even as to those legally on the premises, Maine law provides that "a landowner is normally not liable to third

---

**4.** In a recent decision, *Jordan v. H.C. Haynes, Inc.,* 504 A.2d 618 (1986), defendant, who had leased land enclosing a railroad grade crossing, was charged with failing to warn passers-by that railroad ties had been removed from the grade crossing, despite knowing that people used the road and grade crossing. The Maine Supreme Court found that the landowner's "knowledge that the road was used by others is not adequate, *without more,* to raise the issue of whether defendants willfully or maliciously failed to maintain the premises in a safe condition or failed to warn against dangerous conditions thereon." 504 A.2d at 619 (emphasis added). While plaintiff argues that this case suggests that with something "more," a landowner could

be held liable for failure to make its premises safe, we simply do not see this language as a statement by the Maine Supreme Court erasing decades of established Maine case law that a landowner has no duty to make its premises safe for trespassers.

**5.** Section 333 provides in part:
[A] possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care
(a) to put the land in a condition reasonably safe for their reception, or
(b) to carry on his activities so as not to endanger them.

parties for dangers that are open and obvious").

■ Moreover, we do not view the particular circumstances of this case (the Railway's long-time knowledge of frequent pedestrian use, the clear dangerousness of the bridge, and the feasibility of making the bridge safer) as differing from those in other trespasser cases so markedly as to have required the Railway to take affirmative measures to prevent injury to trespassers on its bridge. In *Lewis v. Mains,* 150 Me. 75, 104 A.2d 432, for example, a young girl was injured when she climbed a large sawdust pile along a "well defined path" and came in contact with electric wires that ran to defendant's sawmill. Despite notice to defendant of trespassers' presence, and the clear dangerousness of the wires, the court rejected plaintiff's contention that defendant committed a wanton, wilful or reckless act of negligence.[6] Even when the danger involved was created by a landowner's activity, rather than a static condition of the land, the Maine Supreme Court has held that defendant's duty to refrain from "wilful, wanton or reckless acts" was not violated. *See Willey v. Maine Central,* 137 Me. 223, 18 A.2d 316 (railroad not liable to six-year-old trespasser hit by a train while crossing the tracks, even though it knew that children often used the tracks as a shortcut to school).[7]

That it was feasible, as the district court found, for the Railway to have made the bridge safer (by either erecting a barrier gate or installing handrails) does not warrant a finding of liability under Maine law. Even if the effort required of a landowner to make its land less dangerous is minimal, Maine courts have placed the responsibility for protection of trespassers on the person who unlawfully intrudes:

> [W]hat logical reason is there for saying that one, young or old, who is wrongfully upon the premises, can hold the owner to the expenditure of *any* money, or the submission to *any degree* of inconvenience, for his protection? We can think of none. We think there is no reason except the sentimental one, and that is not the basis of a legal obligation.

*Nelson v. Burnham & Morrill Co.,* 114 Me. 213, 219, 95 A. 1029, 1032 (1915) (emphasis in original).

■ Plaintiff argues that even if the Railway did not have a duty towards adult trespassers to make the bridge safe for pedestrian use, it had a special responsibility towards minors who trespass. In *Jones v. Billings,* 289 A.2d 39 (Me.1972), the Maine court adopted section 339 of the *Restatement (Second) of Torts* (1977), which establishes a duty of reasonable care as to highly dangerous conditions on land involving "an unreasonable risk of death or serious bodily harm" *if the trespasser is a child who, because of his youth, fails to discover or appreciate the condition or risk.*[8] But here, even assuming a 15–year–

---

**6.** *See also Robitaille,* 147 Me. 269, 86 A.2d 386 (railroad violated no duty to trespasser simply by maintaining a track and ramp on its premises, despite evidence that the public used the railroad ramp for many years); *Dixon,* 98 Me. 207, 56 A. 761 (factory owner violated no duty to trespasser who stepped into an unguarded open vat containing hot fat which was located in a passageway used by many people, even though opportunities existed to warn plaintiff of danger); *Restatement* § 333, comment a (a possessor of land is not liable to trespassers for physical harm caused by failure to exercise reasonable care to put land in a reasonably safe condition even where "possessor has every reason to realize that there is a strong probability that trespassers will intrude upon his land").

**7.** *See also Kapernaros v. Boston & Maine Railroad,* 115 Me. 467, 99 A. 441 (1916) (despite existence of a well-defined path to the railroad tracks and that engineer could have anticipated that children might be on the tracks, defendant not liable for death of child killed by a train while playing between the rails since duty to refrain from wantonly or wilfully injuring trespasser was not violated).

**8.** Section 339 provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unrea-

old qualifies as a child for the purposes of section 339, Thibodeau clearly knew and understood the danger of riding his bicycle across the bridge at night. Eight months before, a classmate of his had died after falling off a nearby railroad bridge (under the control of a different railroad) while bicycling across it; Thibodeau knew of this accident. Moreover, his family as well as his friend, Mark Sheink, had warned him on the night of the accident not to ride across the railroad bridge. The limited exception under section 339 does not apply. *See Restatement* § 339, comment m (noting that the purpose of a landowner's duty under section 339 is *not* to protect children from their own immature recklessness in the face of known and appreciated danger).

### III.

A final issue is whether the Railway owed Bonney an independent duty as a foreseeable rescuer, even though the Railway did not violate any duty to the person Bonney sought to rescue. While the district court did not reach this issue since it found that the Railway had violated a duty to Thibodeau, the court noted that the Maine courts have yet to address the question of whether or not a landowner owes an independent duty to the potential rescuer of a trespasser endangered by the landowner's negligence. We are aware of no Maine case that permits a rescuer of a trespasser to recover independently against a landowner, and plaintiff cites only an English case which might possibly support her position. *See Videan v. British Transport Commission*, 2 Q.B. 650 (1963); *see also* W. Prosser & W. Keeton, *The Law of Torts* § 43, at 288 (5th ed. 1984) (acknowledging a possible independent duty to a rescuer).

Plaintiff argues that this court should nonetheless recognize an independent duty

to rescuers under Maine law on the grounds that "[b]y keeping its bridge in a dangerous condition, [the Railway] created a likely and *foreseeable* risk of harm to potential rescuers who would be called to the scene." (Emphasis added.) We decline to do so, as we cannot say with reasonable assurance that the Maine courts would expand the scope of a landowner's duty in this manner. Even assuming that an ill-starred rescue attempt would be "foreseeable" here, this fact would not necessarily induce a state court to look beyond the traditional rescue doctrine, which makes a landowner liable to a rescuer only when the former has committed a *tortious* act to the person actually endangered, the rescuee.

All American courts of which we know have so far rejected the concept of an independent duty to a rescuer without an underlying tortious act to the person actually placed in peril. In *Brady v. Chicago & N.W.R. Co.*, 265 Wis. 618, 62 N.W.2d 415 (1954), a nine-year-old boy who trespassed upon a railroad bridge, fell into the river and drowned. A 13–year–old companion who attempted to rescue the boy also drowned. After denying recovery on behalf of the boy sought to be rescued because he was a trespasser, the Wisconsin court concluded that those suing for the rescuer could not recover either since

> where the act of the defendant is not tortious and presents no cause of action to the person in danger, an attempted rescue creates no new, independent right or liability. If a defendant did not breach a duty which it owed the person to be rescued it is, on the same facts, guilty of no breach of duty owed the rescuer. Without some breach of duty there is nothing upon which liability may be based.

62 N.W.2d at 419–20. *See also McGinty v. Nissen*, 127 Ill.App.3d 618, 82 Ill.Dec. 911, 913–15, 469 N.E.2d 445, 447–49 (1984);

sonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*Neff v. Woodmen of the World Life Insurance Society,* 87 N.M. 68, 529 P.2d 294, 296, *cert. denied,* 87 N.M. 48, 529 P.2d 274 (1974); *Montega Corp. v. Grooms,* 128 Ga. App. 333, 196 S.E.2d 459, 463–64 (1973); *Neal v. Home Builders, Inc.,* 232 Ind. 160, 111 N.E.2d 280, 295 (1953).

Given the uncertainty in this area, we cannot presume that Maine recognizes an independent duty to rescuers, and we have no license on our own, in a diversity case, to expand the existing narrow scope of a Maine landowner's duty to trespassers. We are supposed to apply state law, not rewrite it. *See Tarr v. Manchester Insurance Corp.,* 544 F.2d 14, 14–15 (1st Cir. 1976) (per curiam).

Since Maine law recognizes no independent duty to Bonney as rescuer, and since we hold that the Railway did not violate any duty to Thibodeau (and thus cannot be held derivatively liable for Bonney's death), we need not address appellant's other arguments.

*The judgment of the district court is reversed, and the case is remanded with directions to dismiss the complaint.*